99 54
100 312

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## NOLTING v. NATIONAL BANK OF VIRGINIA.

### JANUARY 17, 1901.

1. BANKS—*Deposit by Agent—Beneficial Interest—Deducting Debt of Principal.*—A bank which has received money on deposit for an agent, who has a beneficial interest therein, cannot disregard that interest and apply the money to a debt due it from the agent's principal.

2. BANKS—*Accepting Deposit—Relation of Depositor.*—A bank, by accepting a deposit, assumes the relation of debtor to the depositor, and promises to pay the amount according to his check. This contract is between the depositor and the bank alone, without reference to the beneficial interest in the money deposited.

3. BANKS—*Beneficial Owner of Deposit—Who May Sue.*—Where the beneficial interest in a deposit is wholly in another, it is doubtful whether the beneficiary can maintain an action at law for the money. It seems certain that he cannot do so, unless he shows *clearly* that the money *belongs to him*, and that he is entitled to receive it.

4. BANKS—*Relation to Depositor.*—The tendency of courts is in favor of enforcing the contract made by the bank with the depositor. The bank's promise, and the availability of the funds, are property rights which ought not to be any more liable to another's debts than the money would have been if the depositor had retained it.

5. CHANCERY PRACTICE—*Adjusting Equities—Legal Advantage.*—A court of equity will never deprive a party of a fair legal advantage for the benefit of one who has no superior equity. It will inquire into all the equities of the parties, and will properly adjust them, but will not take from one to give to another where right and justice do not require it.

6. CREDITOR AND DEBTOR—*Limit of Rights of Creditor Against Funds of Debtor.*—Usually, unless some statutory right intervenes, a creditor cannot occupy a better position with reference to funds of the debtor than the debtor himself, nor take what his debtor is not entitled to.

7. BANKS—*Deposit by Agent Having Interest—Inability of Principal to Recover—Bank's Right to Set off Debt of Principal.*—A bank cannot be said to be indebted to a principal on account of money deposited by an agent in his own name, when the circumstances are such that the principal could not recover the amount by action at law, or suit in equity. It is a debt due the agent, and the bank cannot set off against such deposit a debt due to it by the principal.

8. BANKS—*Depositor—Addition of "Cashier" to Name of Depositor.*—The mere addition of the word "cashier" to the depositor's name, did not, under the facts of this case, affect the character of the deposit, as between the bank and the depositor.

9. BANKS—*Deposit by Agent—Notice of Interest.*—That a depositor has an interest in a fund deposited is sufficiently disclosed to the bank by depositing the money in his own name, though with an addition that does not change the nature of the deposit, and notifying the cashier that no other person than himself is to check on the fund.

Appeal from a decree pronounced by the Chancery Court of the city of Richmond in a suit in chancery, wherein the appellee was the complainant, and the appellant and others were the defendants.

*Reversed.*

The opinion states the case as viewed by a majority of the court.

*Thomason & Minor* and *Henry R. Pollard*, for the appellant.

*Christian & Christian*, for the appellee.

PHLEGAR, J., delivered the opinion of the court.

By a contract, dated January 4, 1892, it was agreed between W. O. Nolting and Davis & Gregory Company (a partnership) that he should act as their cashier for the sale of tobacco at a warehouse in Richmond, and should procure the money to pay the farmers for their tobacco, on the days of sales, receive all proceeds of sales, make all deposits, sign all checks, and have full supervision and control of the collection of the buyers' bills.

For the purpose of securing to Nolting the moneys he might advance, and in consideration of what he was to do, "all of the proceeds of the sales of tobacco, and all buyes' notes therefor, were assigned, transferred and set over to said Nolting," with a covenant that all money from such sales, and all such bills should be paid only to him, and that, from such money, he should first reimburse himself, and pay the residue to Davis & Gregory Company.

Nolting entered upon the duties of his employment, opened an account with the appellee, in the name of "W. O. Nolting, Cashier," by depositing about $5,000, which he advanced for the conduct of the business. At the time he opened the account, he notified the cashier that no one was to check on that account but himself. He proceeded to sell tobacco, pay the farmers by checks on the bank, collect from the buyers, and deposit to such account the checks and moneys received.

On the 12th of April, 1892, the bank paid and charged "Nolting, Cashier," with five hundred dollars on a check which W. O. Nolting had drawn for ten dollars, and which had been fraudulently raised to five hundred dollars. Nolting refused to recognize this check for more than ten dollars, the bank refused to lessen the charge it had made, and he sued it for four hundred and ninety dollars. On the trial of the suit Nolting and Davis testified that the suit was for the benefit of the firm, and that it would be entitled to the recovery. In the present suit, he explained that he understood that Davis & Gregory would be liable to him for the four hundred and ninety dollars, if it was not recovered from the bank, and therefore he considered that the suit was really for their benefit.

At the time the raised check was paid, no other money had been deposited to the credit of W. O. Nolting, Cashier, than the advance made by him, and the collections from sales of tobacco. Subsequently, the proceeds of some discounts which the bank made for Davis & Gregory Company were placed to the credit

of that account, and checked to Davis & Gregory Company for other business. Neither side attempted to show the amount of such deposits and checks, and no other commingling of the funds is suggested. This occurred, as already stated, after the bank had paid the money now in dispute on the raised check.

The contract of January 4, 1892, provides that, " if from any cause, such collections (*i. e.*, from sales of tobacco, etc.) do not suffice to repay said second party all that he has advanced or procured as aforesaid, such deficit shall be repaid him by said first parties on demand." If the Davis & Gregory Company had at any time deposited more money to the account of W. O. Nolting, Cashier, than was checked back to them, they only did what they contracted to do, paid the deficit. There is nothing in the record in any way contradicting the claim of Nolting that Davis & Gregory Company are indebted to him for more than the sum in controversy, and the Circuit Court held that they were so indebted. There is now nothing to the credit of the " Nolting cashier " account which does not belong to Nolting under the terms of the contract.

Nolting recovered in the suit against the bank, and the judgment was affirmed by this court. See *National Bank v. Nolting,* 94 Va. 263.

The bank then filed a bill, in the Chancery Court for Richmond city, to enjoin the collection by Nolting of the judgment, claiming that the recovery belonged to Davis & Gregory Company; that they were indebted to it in a larger amount, were insolvent, and that the judgment should be applied to their indebtedness to the bank. Nolting defended, claiming the recovery by reason of the contract of January 4, 1892, and of an assignment to him, dated December 17, 1894, of the specific amount sued for. He claimed that the company was indebted to him in excess of the amount of the judgment. The evidence shows clearly that Davis & Gregory Company were indebted to the bank prior to April 12, 1892, and have so continued; their

indebtedness, when the suit was brought, being nearly three thousand dollars; that they were insolvent, and that they owed Nolting about nine hundred and fifty dollars when the suit was brought.

Considerable testimony was taken to prove or rebut notice to the bank of the contract of January 4, 1892, which it is unnecessary to state in detail.

The Chancery Court perpetually enjoined the collection of the judgment.

It has not been controverted, nor can it be successfully done, that Nolting is entitled to the money in controversy as against Davis & Gregory Company. Nor can it be controverted that, when Nolting had the funds in his own hands before the deposit, neither the bank, nor any one claiming through it, could have taken it from him.

The question to be determined is: " Can a bank which has received money on deposit for an agent who has a beneficial interest therein, disregard that interest, and apply the money to a debt due it from the agent's principal?"

By accepting the deposit, the bank assumed the relation of a debtor to W. O. Nolting, and promised to pay the amount according to his check. This contract is between the depositor and the bank alone, without reference to the beneficial interest in the money deposited. *Cent. Nat Bank* v. *Conn. Mut. L. Ins. Co.*, 104 U. S. 54; *Robinson & al.* v. *Gardiner & al.*, 18 Gratt. 511-512; Jones on Liens, sec. 246.

Even where the beneficial interest is wholly in another, it is doubtful whether he can maintain an action at law for the money. It seems certain that he cannot do so unless he *shows clearly* that the money *belongs to him* and that he is entitled to receive it.

In the case of *Sims* v. *Bond*, 5 Barn. & Adolp. 97, decided in 1833, a suit against a banker by one who claimed to be the real owner of money deposited by another, the court said, the rule

that when the agent of an undisclosed principal makes a contract not under seal, an action may be maintained thereon either in the name of the principal or the agent, was generally acted upon in sales made by factors, agents or partners; and added, " but we do not say that when a person lends money nominally on his own account, *but really on account of and as the loan of another,* the real lender may not sue for the money. But where the money is lent by another in his own name, the plaintiff who alleges that he was *really the lender* must prove that fact distinctly and clearly. He must show that the loan, though nominally that of another, was *really intended to be his own.*"

In *Tassell* v. *Cooper,* 9 C. B. 509, decided in 1850, the court held that a bailiff who had deposited his principal's money in bank, and was indebted to the principal, could recover from the bank notwithstanding that the principal had notified the bank that the fund was his, and not to pay it to the bailiff. The reason assigned was that, when a deposit is made by a person to his own credit with a bank, it is not competent for a third party to interpose and say that the bank really contracted with him.

In *Jackson* v. *U. S. Bank,* 10 Barr (Pa. St.), 61, the court held that a bank which received money on deposit in the name of a person who was an agent, and paid the agent's checks after a garnishee was served on the bank at the instance of a creditor of the agent, could not defend itself by showing that the money deposited was received by the depositor from his principal, for a particular purpose, and that the checks paid were drawn for the accomplishment of that purpose. One of the reasons given was that the bank, having received the money from the depositor, as his money, could not resist his demand by showing that the money did not belong to him, and, as the garnisheeing creditor was entitled to stand in the depositor's shoes, could not resist his demand.

It seems from these cases that the tendency of the courts is in favor of enforcing the contract made by the bank with the

depositor. This is rightly so. Banking business is founded on
the idea of immediate availability of the funds deposited. One
who deposits money in bank considers that he has that much as
available as if it were cash in his pocket. The bank's promise,
and its availability, are property rights which ought not to be
any more liable to another's debts than the money would have
been if the depositor had retained it.

It seems perfectly clear from these authorities, that, even if
Davis & Gregory Company could litigate the question in a court
of law, they could not recover the fund from the bank, because
the loan was not deposited in reality for them. The fund did not
belong to them, and they had no interest in it, except to have it
credited on what they owed Nolting.

It seems equally clear that they would have no standing in a
court of equity against their contract and assignment, and the
lawful possession of the fund by Nolting.

A court of equity will never deprive a party of a fair legal
advantage for the benefit of one who has no superior equity.
It will inquire, as a court of law cannot do, into all the equities
of the parties, and will properly adjust them, but will not take
from one to give to another, where right and justice do not
require it.

How can the bank, which is a simple contract creditor of
Davis & Gregory Company, occupy a better position than they
do? It is certainly a general principle that the creditor cannot,
unless some statutory right intervenes, occupy a better position
than his debtor, or take what his debtor is not entitled to. *Dingus
et als.* v. *Minneapolis Imp. Co.*, 98 Va. 737.

But it is claimed that the banker's lien gives the bank this
right.

The banker's lien (which, where it relates to balances due on
accounts, is a right to set off, rather than a lien—*Ford* v. *Thorn-
ton*, 3 Leigh, 695) is defined in 1 Morse on Banks and Banking,
as "a mere right of the bank to retain in its own possession,

property, the title of which (absolute or special) is, or in the case of negotiable paper, purports to be, in one against whom the bank has some demand, until that demand is satisfied."

In section 334, the same writer says: " The debts must be between the same parties, and in the same right. It is not necessary that the claims should run between the nominal parties to the suit, if they *are really due to and from the same funds on both sides.*" Davis & Gregory Company having neither the legal nor the equitable title to the debt due by the bank, having no right to recover it by suit at law or in equity, it cannot be said that the bank is indebted to them. If it is not indebted to them, there is nothing to set off against their debt to the bank. In other words, there are no mutual demands between the parties.

The case of *Falkland* v. *St. Nicholas National Bank*, 84 N. Y. 145, was a much stronger case for the bank than this case is. There, a firm of ship brokers became embarrassed, and caused the moneys which they received in business, and which belonged to their customers, to be deposited with the bank in the name of their book-keeper; the object being to protect the fund from attachment by their creditors, and to enable them to pay it to their customers. They managed and controlled the business just as they had done before the account was placed in the book-keeper's name. The bank was not notified that the book-keeper held the fund in trust, and none of the parties entitled to the fund made any claim upon the bank for it. The bank discounted a note for the firm, and, when it became due, charged it to the account kept in the name of the book-keeper. In a suit by the administrator of the book-keeper against the bank, it was held that the bank could not charge the note to the account. The bank's contention was that the money was received by the ship brokers, and was really deposited for their benefit, and therefore became liable for their debt to the bank. The party in whose name the money was deposited had no interest in it, the bank

had no notice that it was a trust fund, and the suit was by the party having the naked legal title, yet he recovered.

The court gave as its reasons for adjudging the money to the plaintiff, that " it must be made *clear* that the money deposited *actually belongs* to the person from whom the debt is due to the bank;" that, "conceding that moneys are applicable, even although they are deposited by and in the name of another, the same as if in the name of the actual owner, the fact of ownership must be made to appear, and it must be shown satisfactorily that such owner is the person indebted to the bank, and *really* entitled to the funds deposited; that the funds in that case really belonged to the firm's customers, and not to the firm, and therefore were not liable to the banker's lien or right to set-off. On the question of lack of notice to the bank, the court said: " The deposit being in the plaintiff's intestate's name alone, and not for Ruger Bros. (the ship brokers), he was under no obligation, and owed no duty, which required that he should notify the defendant that he held the funds in trust, or that other parties besides himself had an interest in the deposits. It could not affect the defendant's rights in any sense, because it had no notice, as it had no claim whatever, and no reason for relying upon a fund deposited in the name of another for the payment of its debt against Ruger Bros. *In fact, from* the deposit itself the defendant *had notice that the fund belonged to the depositor*, and not to Ruger Bros."

This reasoning is doubly strong when the depositor is the real, the beneficial owner. The addition of "Cashier" to Nolting's name did not affect the character of the deposit as between the bank and the depositor. 2 Morse on Banks and Banking, sec. 604.

In *Patterson* v. *Marine Bank,* 130 Pa. St. 419; 17 Am. St. Rep. 778, the plaintiff deposited money with the defendant to his credit as "agent." The bank paid the amount on deposit to the persons who claimed to be his principals, and plaintiff sued the bank. The court said: " It is clearly against public policy to

permit a bank that has received money from a depositor, credited
him therewith upon its books, and thereby entered into an im-
plied contract to enter his check, to allege that the money de-
posited belonged to some one else.    This may be done by an
attaching creditor, or by the true owner of the fund, *but the bank
is estopped by its own act."*  See also *Hemphill* v. *Yearkes*, 132
Pa. St. 545, 19 Am. St. Rep. 607.

If the law is as contended for by the appellees, no attorneys,
trustees, or fiduciaries of any character, who have liens on the
funds which they handle, for their fees or for advances, could
afford to deposit in banks without disclosing the details of their
business.    This would deter such persons from depositing, and
would be disastrous to the banks.

We have been referred to a number of cases in which it has
been held that the right of a banker to set off the balance due a
depositor on his account, against a debt of the depositor to the
bank, is superior to the equities of third parties to whom the
fund really belongs, unless the bank had notice of such equities.
The reason is that the bank is presumed to have made advances
to the depositor, on the faith of the deposit account.    Those
cases do not apply to the case in hand.    They were all contests
between creditors of the depositor—the bank on the one hand,
and the equitable claimant of the fund on the other.    The deposi-
tor owed the money to one or the other.    The courts protected
the bank's legal possession, unless notice of the other's rights
created a superior equity.    Here the depositor owes neither the
bank nor the bank's debtor.    The money is his both legally and
equitably.

But if the notice to the bank were necessary, we would be
very strongly inclined to ask, what better notice, that the deposi-
tor has an interest in his deposits, is required, than that he brings
the money to the bank, deposits it in his own name, though with
an addition that does not change the nature of the deposit, and

notifies the cashier that no other person than himself is to check on that fund?

We think the explanation given by Nolting of what he said in the suit at law, about its being for the benefit of Davis & Gregory Company, is sufficient, especially as the bank was not misled thereby, and the debts due to it by Davis & Gregory Company were contracted long prior to that statement.

When this court, on the writ of error to the judgment at law, *National Bank* v. *Nolting,* 94 Va. 264, referred to the general principle that where a contract not under seal is made with an agent, and in the agent's name, for an undisclosed principal, either may sue, there was no necessity for distinguishing between an agent, who was a depositor in bank or lender of money, and a factor, and that was not referred to. The distinction which is referred to herein, strengthens the correctness of the judgment then pronounced.

The decree of the Chancery Court of Richmond city should be reversed, and this court, entering such decree as should have been entered, will dissolve the injunction, dismiss the bill, and decree costs in both courts to the appellant, W. O. Nolting.

KEITH, P., and CARDWELL, J., dissenting:

We concede that the law is correctly presented in the opinion of the court as applicable to the facts as there found, but we feel constrained to dissent from the conclusion, because we do not think the evidence warrants the statement of facts upon which the opinion is predicated.

*Reversed.*