# Wythebille

PEOPLES NATIONAL BANK V. J. B. COLEMAN.

June 10, 1940.

Record No. 2211.

Present, All the Justices.

484

The opinion states the case.

*S. B. Campbell* and *G. P. Young*, for the appellant.

*R. L. Jordan* and *Ted Dalton*, for the appellee. '

CAMPBELL, C. J., delivered the opinion of the court.

This appeal brings under review a final decree of the Circuit Court of Pulaski county, entered in the chancery cause of J. B. Coleman, complainant, against the Peoples National Bank of Pulaski, respondent (hereafter called the bank).

Coleman instituted a suit in equity against the bank, alleging in his bill of complaint that the bank was indebted to him in the principal sum of $2,761.60, due to the refusal of the bank to honor a check drawn in his favor by R. S. Cecil, a depositor of the bank, for that amount, and the application of said sum of money as a credit upon a note of R. S. Cecil held by the bank.

A demurrer was filed by the bank on the ground that "the bill filed is not sufficient in law to entitle the plaintiff to the relief prayed for because the bill fails to state a case and because there is no title in the plaintiff to maintain the action * * * ."

■ The bill specifically alleges that the sum of $2,761.60 had been deposited by Cecil for the express purpose of paying the check in favor of complainant; that the bank had knowledge of the fact that this sum of money was impressed with a trust and was being held for the benefit of complainant, and that therefore, the bank had no authority to appropriate this money to its own use. On demurrer, the allegations of the bill relative to the facts stated are conceded to be true.

■ That a court of equity had jurisdiction to determine the matter is beyond cavil for the reason that the suit was instituted to enforce a trust.

The action of the court in overruling the demurrer was without error.

Upon the submission of the cause upon the bill, answer and depositions of witnesses, the court entered a judgment against the bank in the principal sum of $2,761.60. It is this decree which is complained of.

Upon a conflict of evidence, the following facts may be deduced in favor of complainant: Coleman, a citizen of the town of Pulaski, Virginia, was the owner of a dwelling house located in the town. In the year 1937 he listed this property for sale with R. S. Cecil, a licensed real estate agent, who, prior to entering the real estate business, had been an employee of the bank in the capacity of cashier. On September 2, 1937, Cecil, agent, sold the property to Dr. R. O. Smith for the sum of $7,350, the terms of sale being the assumption by Smith of a certain mortgage upon the property and the balance of $3,119.10 being paid by the check of Smith drawn in favor of Cecil. On the day the sale was consummated, Cecil deposited the check of Smith, drawn on an out-of-State bank, in the defendant bank, and at the time of making the deposit he made this statement to W. L. Dudley, cashier: "I asked him to send the check direct for collection, that it was the proceeds of the sale of the Coleman property and I had given Mr. Coleman a check ($2,761.60) for his part and that I wanted the funds there when he presented the check for payment."

Due to illness in his family and because he was not in need of funds, Coleman did not present the check of Cecil for payment until January 31, 1938. During the period from September 7, 1937, when the amount of the Smith check was credited to the account of Cecil, his (Cecil's) balance in the bank fluctuated above and below the amount of the Coleman check, which condition was condoned by the bank. Upon ascertaining from his bank statement that the Coleman check had not been presented for payment, Cecil changed his account from personal to that of agent, with the view, as stated by him, of meeting the Coleman check.

On January 19, 1938, Cecil was adjudged a bankrupt, being at that time indebted to the bank in the sum of $11,-400, evidenced by a note which had been renewed from time to time over a period of several years, and which was secured at the time he left the bank by certain shares of stock, the indorsement of his wife, a mortgage on real estate and a life insurance policy in the amount of $10,000.

On the same day he filed his petition in bankruptcy, Cecil deposited in the bank, to his account as agent, the sum of $150. In answer to the question: "Please state why you made that deposit * * * and for what purpose?" Cecil stated: "I filed my Petition in bankruptcy on January 19, and Mr. Sutherland, my Attorney, asked if I had any money. I believe I told him I had 3 cents in my pocket, but I didn't know what I had in the bank. I asked the bank for my balance and didn't have enough to pay the Coleman check. I had a note down in the Pulaski Trust Company with five shares of Peoples National Bank stock as collateral, which Mr. Wirt had told me prior to that he had sold. I told Mr. Sutherland this and he instructed me to get the money, which I did, in the amount of $200.00. $150.00 was deposited to my Agent's account of the Peoples National Bank in order that the Coleman check could be taken care of, $40.00 was given to Mr. Sutherland, to send off my bankruptcy petition, and $10.00 I used to buy something to eat."

Upon ascertaining that Cecil had become a bankrupt, the bank, not upon the immediate initiative of its cashier, but

later, upon the advice of counsel, applied the sum of $2,-782.65, which was standing on the bank books in the name of R. S. Cecil, agent, to the note due by Cecil in his individual capacity, though aware of the fact that the due date of the note was February 1, 1938, as shown by the evidence of Dudley. The Coleman check was presented at the bank on January 31, 1938, and payment thereof refused.

■ Having reached the same inescapable conclusion reached by the lower court—that the bank had actual notice that the deposit made by Cecil was impressed with a trust in favor of Coleman—it is unnecessary to discuss the various contentions of counsel for the bank, that before the complainant can recover he must be able to identify the money deposited by Cecil; that the bank was without notice as to the character of the deposit; that the note held by the bank was an order on the bank to pay the amount thereof to itself; that the giving of a check is not an assignment of the fund in bank; that the addition of the word "Agent" to Cecil's account in no way changed its status; that the negligence of Coleman in not presenting the check prevents a recovery.

■ Whatever may be the rule in other jurisdictions, the accepted doctrine in this Commonwealth is that one stated in *Federal Reserve Bank* v. *State and City Bank, etc., Co.,* 150 Va. 423, 143 S. E. 697. In delivering the opinion of the court, Judge Chichester said: "In the note, page 424, of 111 Am. St. Rep., in discussing the bankers lien 'On General Deposits' where the equities of third parties are involved the annotator says: 'Where trust funds are deposited with a bank, and the bank has notice of their trust character, it has no right to appropriate them to the payment of the individual debt of the depositor due from him to it. * * * .' "

■ This view that a bank has no right to set off against a debt due the bank, money deposited by the debtor in his own name, but which, in fact, is impressed with a trust of which the bank has knowledge, is supported by the great

weight of authority. In 7 Am. Jur. p. 462, the general rule is stated thus:

"It is universally conceded that knowledge upon the part of a bank that deposits made by a debtor of the bank in his own name belong to a third person absolutely precludes the bank from applying such funds to the individual indebtedness of the depositor to it."

See also, Morse on Banks and Banking (6th Ed.), section 590, p. 1244; *Chase & Baker Co.* v. *Olmsted,* 93 Wash. 306, 160 P. 952; *Steere* v. *Stockyards National Bank* (Tex. Civ. App.), 266 S. W. 531; *Brown* v. *Maguire's Real Estate Agency* (Mo. App.), 101 S. W. (2d) 41; 9 Corpus Juris Secundum, Banks and Banking, p. 631, section 304.

In answer to the contention of counsel for the bank that the instant case is controlled by the doctrine enunciated by this court in *Overseers of the Poor* v. *Bank of Virginia,* 2 Gratt. (43 Va.) 544, 44 Am. Dec. 399, and *Nolting* v. *National Bank,* 99 Va. 54, 37 S. E. 804, it suffices to state that the question of actual notice upon the part of the bank involved was not considered in those cases, and therefore, they are not in point.

The conclusion we have reached does no injustice to the bank, for the reason that there has been no change in the status of the bank, as it is admitted that its debt against Cecil had been running for years, and the bank, in our opinion, had actual notice that the deposit made by Cecil of the Smith check was impressed with a trust in favor of Coleman.

The decree of the circuit court is plainly right, and it will be affirmed.

*Affirmed.*