In re KENNEY'S FRANCHISE
CORPORATION, Debtor.

KENNEY'S FRANCHISE CORPORA-
TION, Debtor, & Donald W. Huff-
man, Trustee, Plaintiffs,

v.

CENTRAL FIDELITY BANK, NA,
Lynchburg, Defendant.

Bankruptcy No. 7–80–0243.
Adv. No. 7–80–0219.

United States Bankruptcy Court,
W. D. Virginia,
Roanoke Division.

June 26, 1981.

James F. Douthat, George A. McLean, Jr., Roanoke, Va., for debtor/plaintiff.

Charles F. Barnett, Jr., Roanoke, Va., for defendant.

Donald W. Huffman, trustee, Roanoke, Va.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

Kenney's Franchise Corporation (Debtor) and Donald W. Huffman, Trustee for the Debtor in this Chapter 11 case filed Complaint in this Court seeking recovery from the Defendant, Central Fidelity Bank (Bank) or (Defendant), of the sum of $12,077.81 claimed to be improperly held by the Defendant as the result of a "freeze" of a checking account of the Debtor when the Bank learned that the Chapter 11 case was filed in this Court by the Debtor.

The Defendant filed an answer and counterclaim alleging that it had a right to "freeze" the bank account in the above amount representing deposits in a checking account. The reason given by the Bank in its counterclaim basically is that the Bank has a "banker's lien" upon the account and that pursuant to 11 U.S.C. § 362(d) it had the right to hold or "freeze" said funds unless and until the Court granted it adequate protection pursuant to said section, and that the same being "cash collateral" the Debtor was precluded from using the account funds without approval of the Court as provided by 11 U.S.C. § 363(c)(2), and further, that the Bank retained the right of set-off of said funds to the credit of the Debtor's indebtedness to the Bank.

The parties stipulated the facts relating to the issue and have filed memoranda of law in support of their respective positions.

Generally, from the stipulation it appears that the Debtor on December 21, 1978, opened a checking account in the Defendant's bank. The account was set up in the regular course of business and used for purposes of a general checking account. In March, 1979, the Bank entered into a loan with the Debtor for approximately $95,000.00 with security documents executed securing the loan upon equipment and fixtures worth approximately $69,000.00 in one of the fast food operations in which the Debtor was engaged.

On March 5, 1980, the Debtor filed its Chapter 11 petition in this Court, at which time the balance remaining due upon the loan was approximately $63,000.00. On March 6, 1980, the Bank learned of the Chapter 11 petition and thereupon "froze" the checking account with a balance of $12,077.81 which account remains frozen to this date and there has been no application of the proceeds of the checking account to the satisfaction of the indebtedness; in other words, no set-off.

Upon proper proceedings in this Court, the Bank obtained relief from the stay of 11 U.S.C. § 362 and executed upon its security interest realizing proceeds from foreclosure of approximately $25,000.00, leaving a remaining balance of approximately $40,000.00. William Kenney, principal shareholder of Debtor, and his wife personally endorsed the loan guaranteeing the same and on April 18, 1980, after the Bank refused to release the checking account upon request of Counsel for the Debtor-in-Possession, the Bank filed suit in State Court against the Kenneys upon their endorsement and on July 9, 1980, in consideration of the Bank's forbearance in not enforcing the judgment, the Kenneys executed a deed of trust upon real estate owned by the Kenneys in the City of Salem. This deed of trust gave the Bank a fifth deed of trust as additional security subsequent and subordinate to taxes owing to the City of Salem of approximately $3,500.00, two deeds of trust to a savings and loan institution of approximately $306,000.00 and a mechanics' lien of approximately $4,700.00. The property upon which the fifth deed of trust was given, was appraised for $600,000.00 and had been offered for sale by the Kenneys theretofore for $800,000.00, but not sold.

This case arises under the *Bankruptcy Reform Act of 1978* and the applicable provisions therein. 11 U.S.C. § 553 relates to the right of set-off by creditors. In essence, it permits set-off as provided therein except set-offs subsequent to the filing of the petition by the Debtor in this Court invoking the automatic stay provisions of 11 U.S.C. § 362. The automatic stay precludes a creditor from the act of set-off. The language of the stay provision is broad and

all-encompassing. It admits of no exception except those contained in 11 U.S.C. § 362(b) which does not authorize a set-off. § 362(a)(7) in its language specifically prohibits the set-off of a debt as in the case at bar.

In order to avoid and circumvent the provisions of 11 U.S.C. § 362(a)(7) the Defendant, in this case, sought to invoke as a protective measure what is denominated in parlance and nomenclature as a "freeze".[1] The inference which the Court must draw from the stipulated facts is to the effect that what was done by the Bank on March 6, 1980, upon learning of the Chapter 11 petition, was to thereupon exercise control and dominion over the checking account to the exclusion of rights of the Debtor and to fail to honor checks which may have been written upon the account. Section 362(a)(4) stays "any act to create, perfect, or enforce any lien against property of the estate; . . ." Similarly, § 362(a)(5) is, likewise, applicable and contains the equivalent language.

The language used in the Congressional enactment of 11 U.S.C. § 362 was intended to be broad and to admit no exception except those specifically set forth in subparagraph (b) not applicable herein. *See* 2 *Collier on Bankruptcy* (15th ed.) § 362.04 wherein the author states that the language

. . . is extremely broad in scope and aside from the limited exceptions of subparagraph (b) should apply to almost any type of formal or informal action against the Debtor or the property of the estate.

The author further states:

it should be observed that one of the benefits of the stay is creditor protection . . . while the language is from time to time duplicative, little is omitted.

The Bank claims, however, that it has not violated the automatic stay provisions of 11 U.S.C. § 362 for the reason that it is a lien creditor by virtue of its "bank lien"; that as to the checking account, since this account is "cash collateral" under 11 U.S.C.

§ 363, it cannot be used without court approval. Since 11 U.S.C. § 553 eliminated what was prior law under the *Bankruptcy Act of 1898*, giving the right of set-off, whether pre-petition or post-petition and restricting the right of set-off only as to pre-petition set-off, then its remaining remedy was its alleged lien rights and the act of "freezing" of the account until this Court rendered a decision as to the Debtor's right to use the same and then only with proper provisions for adequate protection of the Bank's interest.

The issue, therefore, is the nature of the Bank's lien rights in the checking account.

, For more than a century the bank's right to set-off has been recognized and unquestioned by the courts in proper cases. That right existed as to bankruptcy proceedings, not only in pre-petition set-off but post-petition set-off as herein recited. 11 U.S.C. § 553 has abrogated the bank's right to post-petition set-off and 11 U.S.C. § 362(a)(7) expressly prohibits set-off and invokes the automatic stay enforcing the prohibition immediately upon the filing of a petition in this Court. The Bank's position arises from an erroneous construction of the law. What the Defendant claims as a "bank's lien" is actually no more than the right of set-off. *See* 3A *Michie's Jurisprudence, Banks and Banking* § 80, wherein the author states that properly speaking what is denominated as a "bank's lien" is nothing more than a right of set-off. Citing *Federal Reserve Bank v. State & City Bank & Trust Co.*, 150 Va. 423, 143 S.E. 697 (1928) and further citing *Ford's Adm'r. v. Thornton*, 30 Va. (3 Leigh) 695 (1832) which is cited in Footnote 5 as follows:

the "(banker's lien)" which, where it relates to balance due on accounts, is a right to set-off rather than to a lien, . . .

The authority further cites *Nolting v. National Bank*, 99 Va. 54, 37 S.E. 804 (1901). Hence, the alleged lien as contended by the Bank is, in fact, simply a right of set-off

---

1. Random House Collegiate Dictionary under title "freeze" as to financial terminology as "to

render impossible of liquidation or collection."

existing in its favor and under §§ 553 and 362 exists only as to pre-petition set-off.

The right of set-off of accounts by banks, as governed by the adoption of the Uniform Commercial Code does not improve the bank's position. In *National Acceptance Company v. Virginia Capital Bank*, 498 F.Supp. 1078 (1980) the District Court of the Eastern District of Virginia had occasion to review the Bank's set-off and lien rights against depositors' accounts in Virginia. The District Court at page 1083 analyzed the law of Virginia as it relates to the Uniform Commercial Code as follows:

> We come now to the key issue in this action: whether the Bank's right of set-off was subordinate to the plaintiffs' security interest in the proceeds deposited in Structures' deposit accounts. In this diversity action, the answer to this issue is, of course, governed by the law of Virginia. Virginia law long ago recognized the common-law right of a bank, as a debtor of its depositors, to set-off a matured debt owed to the bank by a depositor against funds on deposit. See, e. g., *Federal Reserve Bank v. State & City Bank & Trust Co.*, 150 Va. 423, 143 S.E. 697 (1928); *Nolting v. National Bank of Va.*, 99 Va. 54, 37 S.E. 804 (1901); *Ford's Adm'r v. Thornton*, 3 Leigh 695 (1832). Although often referred to as a "banker's lien," this right of set-off is not properly a lien upon a depositor's account. Rather, it is "a mere right of the bank to retain in its own possession property the title of which (absolute or special) is, or, in the case of negotiable paper, purports to be, in one against whom the bank has some demand until that demand is satisfied." *Nolting v. National Bank of Va.*, 99 Va. 54, 60–61, 37 S.E. 804, 806 (1901), quoting, I *Morse, Banks*, § 323. This right, however, is not absolute. Virginia adheres to the majority rule that if the bank can be charged with knowledge of the interest of a third party in a deposit account, or notice of facts sufficient to put it on inquiry that such an interest exists, it may not apply the account to satisfy a debt owed by the depositor. See *Peoples Nat. Bank v. Coleman*, 175 Va.

483, 9 S.E.2d 333 (1940); *Federal Reserve Bank v. State & City Bank & Trust Co.*, supra. See also Skilton, *The Secured Party's Rights in a Debtor's Bank Account Under Article 9 of the Uniform Commercial Code*, 1977 So.Ill.U.L.J. 120, 190–96 (distinguishing this "legal" rule from the "equitable" rule giving precedence to the third-party over the bank even if the bank lacked knowledge or notice). If called upon to evaluate this case under the common-law doctrine of set-off in Virginia, therefore, we would be put to the task of determining whether the Bank had either actual knowledge of the plaintiffs' interests in Structures' deposit accounts, or notice of facts sufficient to put the Bank to a further inquiry as to the existence of such interests.

> It is not clear, however, whether this common-law approach to the present priority issue has been altered by Virginia's adoption of Article 9 of the Uniform Commercial Code, which establishes a comprehensive scheme of rules governing secured transactions and the relative dignity of conflicting interests in collateral. Section 9–104(i) of the Code, *Va.Code* § 8.9–104(i), states:

>> This title does not apply ... to any right of set-off....

> Two views of this language have been espoused. Several jurisdictions have held that this exclusion was intended to indicate only that a right of set-off arises under state law as a result of the parties' status, without regard to compliance with the Code, and not that an otherwise extant right of set-off is exempt from Article 9's rules concerning priority of interests in collateral. See *Citizens Nat. Bank v. Mid-States Development Co.*, Ind.App., 380 N.E.2d 1243, 1247 (1978); *Morrison Steel Co. v. Gurtman*, 113 N.J.Super. 474, 274 A.2d 306, 310 (1971); *Associates Discount Corp. v. Fidelity Union Trust Co.*, 111 N.J.Super. 353, 268 A.2d 330, 332 (1970). These courts find support for this conclusion in the remarks of a principal reporter of Article 9, Professor G. Gilmore, who has stated the following view of this exclusion:

"This exclusion is an apt example of the absurdities which result when draftsmen attempt to appease critics by putting into a statute something that is not in any sense wicked but is hopelessly irrelevant. Of course a right of set-off is not a security interest and has never been confused with one: the statute might as appropriately exclude fan dancing. A bank's right of set-off against a depositor's account is often loosely referred to as a "banker's lien," but the "lien" usage has never led anyone to think that the bank held a security interest in the bank account. Banking groups were, however, concerned lest someone, someday, might think that a bank's right of set-off, because it was called a lien, was a security interest. Hence the exclusion, which does no harm except to the dignity and self-respect of the draftsmen."

The "bank's lien" being simply nothing more than a right of set-off is further supported by the authority set forth in 10 *Am.Jur.2d, Banks* § 666 at page 636, the author describes the status as follows:

While this right is frequently called a lien, strictly speaking, it is not such when applied to a general deposit, for, as is well understood, funds on general deposit in a bank are the property of the bank, for which funds the bank is a debtor, and the bank cannot have a lien on its own property; the banker's lien does not, therefore, by the very nature of the transaction and by the further force of the customs and usages of the banking business, extend to general deposits, but rather, has generally been confined to securities and valuables which may be in the banker's custody. This right of a bank with respect to general deposits is more accurately a right of setoff, for it rests upon, and is coextensive with, the right to set off as to mutual demands.

Citing various authorities. The foregoing reasoning based on the nature of the contractual relationship between the Bank and its depositors would appear to place at rest any theoretical claim that such relationship results in a lien in favor of the Bank. As pointed out, it is a contradiction in terms to so denominate the status as creating a "bank's lien".

It appears from the foregoing that the "bank's lien" asserted by the Defendant is nothing more than a right of set-off under prior law and does not rise to a position of a "security interest" under the Uniform Commercial Code. Professor Gilmore in Volume 1, Security Interests in Personal Property § 10.7, indicates that the exclusion set forth in the District Court's decision was designed by the commercial-banking interests. If the asserted right by the Bank herein is not, in fact, a lien nor a security interest, then the powers and rights of a Debtor-in-Possession under 11 U.S.C. § 1107, which incorporates powers of a trustee under 11 U.S.C. § 544, would supersede the rights of the Bank subsequent to the petition herein. The checking account is property of the estate and vests under the jurisdiction of the Debtor-in-Possession, a fiduciary functioning under the orders of this Court. When the bank fails to acknowledge the Debtor's right to reclaim the checking account or to honor checks drawn thereon, it is in essence a contravention of the automatic stay since the bank has the duty under its implied agreement to honor the same. *See National Bank v. Insurance Company*, 104 U.S. 54, 26 L.Ed. 693.

The Congress, by enacting the statutory provisions of the *Bankruptcy Reform Act of 1978* endeavored to create an orderly scheme of statutory provisions which would result in a more orderly administration of bankruptcy cases in this Court. In its wisdom it precluded post-petition set-off and re-enforced that provision by the specific language of 11 U.S.C. § 362(a)(7). By subsections (4), (5) and (6) it attempted to set forth in broad encompassing language the prohibition against acts described therein. The exercise of dominion by the Bank under the claim of a lien in this case to the exclusion of the Debtor's rights was a violation of the spirit and purpose of 11 U.S.C. § 362, the automatic stay.

Accordingly, an order will be entered directing the Bank to turn over the Debtor's funds with appropriate interest. However, since the "freeze" was under a good faith claim, no sanctions will be imposed for the violation of 11 U.S.C. § 362.