**In re Francine Williams OWENS–PE-TERSON, Debtor.**

**GEORGIA FEDERAL BANK, FSB (formerly Georgia Federal Savings and Loan Association), Movant,**

**v.**

**Francine Williams OWENS–PETERSON and J. Sam Plowden, Trustee, Respondents.**

**Bankruptcy No. 83–03505A.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

April 23, 1984.

John T. Brumby, Mitchell, Clarke, Pate, Anderson & Wimberly, Atlanta, Ga., for movant.

Thomas F. Jones, Atlanta, Ga., for debtor/respondent.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This case is before the Court on the motion by the Georgia Federal Bank, FSB (formerly Georgia Federal Savings and Loan Association) (hereinafter referred to as the "Bank") for relief from the automatic stay in the above-referenced Chapter 13 proceeding. The facts, which are not in dispute, are as follows: The Debtor filed her Chapter 13 petition on August 4, 1983. At that time, the Debtor was indebted to the Bank on a line of credit in the amount of $507.17. Since being notified of the Debtor's Chapter 13 petition, the Bank has refused to release funds from a checking account maintained by the Debtor. The balance in the Debtor's checking account as of the date she filed for relief under Chapter 13 was $492.81. The Bank seeks relief from the automatic stay to permit a setoff of this checking account balance against the aforesaid prepetition debt owed to the Bank.

The questions presented are: (1) Has the Bank violated the automatic stay by "freezing" the Debtor's and (2) Is the Bank entitled to set off the mutual prepetition obligation between the Debtor and the Bank?

## "FREEZE" DOES NOT VIOLATE AUTOMATIC STAY

There is a split of authority on the issue of whether freezing a debtor's bank account constitutes a violation of the automatic stay under § 362(a)(7), which states that the filing of a petition operates as a stay of

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor;

However, § 362(a)(7) is not the only section of the Bankruptcy Code pertinent to the issue of setoff. Section 553(a) preserves the

right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of a case under this title against a claim of such creditor against the debtor that arose before the commencement of this case ...

Finally, § 542(b) excepts from the trustee's power of turnover a debt

to the extent that such debt may be offset under § 553 of this title against a claim against the debtor.

A leading case among those which hold that "freezing" a debtor's bank account violates the automatic stay is *In re Kenney's Franchise Corp.*, 12 B.R. 390, 4 C.B. C.2d 112, 7 B.C.D. 1281 (Bkrtcy.W.D.Va. 1981) (hereinafter referred to as "*Kenney's I*"). To paraphrase the Court's words, the Bank in *Kenney's I* exercised control and dominion over the debtor's checking account to the exclusion of the rights of the debtor, and the bank failed to honor checks which may have been written upon the debtor's account. The bank claimed a right to exercise this power pursuant to a "bank's lien", which the Court in *Kenney's I* described as "nothing more than a right of setoff" under Virginia law. *Kenney's I*, 12 B.R. at 394. The Court in *Kenney's I* suggested that this common law right of setoff is not governed by Article 9 of the Uniform Commercial Code [1] but is, instead, excluded pursuant to Uniform Commercial Code § 9–104(i).[2]

The rationale offered in *Kenney's I* for prohibiting such a bank "freeze" is that

the automatic stay precludes a creditor from the act of set-off. The language of the stay provision is broad and all-encompassing. It admits of no exception except those contained in 11 U.S.C. § 362(b)

---

1. "It appears from the foregoing that the 'bank's lien' asserted by the Defendant is nothing more than a right of setoff under prior law and does not rise to a position of a 'security interest'

under the Uniform Commercial Code." *Kenney's I*, 12 B.R. at 394.

2. "This Article does not apply ... to any right of set-off." U.C.C. § 9–104(i).

which does not authorize a set-off. § 362(a)(7) in its language specifically prohibits the set-off of a debt as in the case at bar.

*Kenney's I,* 12 B.R. at 391–392. *Kenney's I* has been cited in at least three other cases reaching the same conclusion. *In re Rappaport,* 19 B.R. 971, 6 C.B.C.2d 746, 749 (Bkrtcy.M.D.Pa.1982) (setoff of a debt that arose prepetition is an express violation of § 362); *In re Cusanno,* 17 B.R. 879, 8 B.C.D. 989 (Bkrtcy.E.D.Pa.1982) (under state law, "administrative hold" on the debtors' account is a setoff, and setoff per § 553 of the Bankruptcy Code is expressly subject to the automatic stay under § 362(a)(7) of the Bankruptcy Code); *In re Cross Keys Motors, Inc.,* 19 B.R. 976, 977 (Bkrtcy.M.D.Pa.1982) ("The setoff of any debt owing to a debtor that arose before the commencement of a case under this title against any claim against the debtor is specifically prohibited."). See also *In re Tom McCormick Enterprises, Inc.,* 26 B.R. 437, 7 C.B.C.2d 1289 (Bkrtcy.M.D. Tenn.1983) (post-petition transfer of proceeds to satisfy prepetition debt is an unauthorized transfer in violation of § 549 of the Bankruptcy Code, whereas the unilateral appropriation of proceeds to satisfy a prepetition debt violates the automatic stay of § 362(a)(7) of the Bankruptcy Code).

The Court in *In re Executive Associates, Inc.,* 24 B.R. 171, 7 C.B.C.2d 605 (Bkrtcy.S. D.Tex.1982), reached a result consistent with *Kenney's I* but expressly distinguished its position from the determination in *Kenney's I* that a "freeze" is the equivalent to a setoff. The Court stated:

> It is the opinion of this Court that even if placing an administrative "freeze" on the debtor's account is not an actual, technical set-off, it is tantamount to a set-off, and results in an unauthorized interference with the property of the Chapter 11 debtor without leave of the Court.

*In re Executive Associates, Inc.,* 24 B.R. at 172, 7 C.B.C.2d at 607. Citing *In re Carpenter,* 14 B.R. 405 (Bkrtcy.M.D.Tenn. 1981),[3] and the legislative history to § 362(a), H.R.Rep. No. 595, 95th Cong., 1st Sess., 183 (1977), U.S.Code Cong. & Adm. News 5787 (1978), the Court in *Executive Associates* stated that the purpose of the automatic stay against setoffs is to protect ongoing businesses under the Bankruptcy Code. Because of this policy, the Court in *Executive Associates* held that the burden was on the bank to seek injunctive relief if the bank believed that a debtor in possession was using cash collateral contrary to the provisions of § 363. The Court added that the burden of proof on the bank would be to show that the debtor is using cash collateral which is subject to such a lien. *In Executive Associates, Inc.,* 24 B.R. at 172–73, 7 C.B.C.2d at 607.

However, the cases discussed above fail to give full consideration to an important factor, namely the Bank's interest in the Debtor's account. In *In re Carpenter, supra,* a liquidation case, the Court permitted the bank to freeze a debtor's account provided that the bank immediately thereafter sought relief from the automatic stay. The Court stated further that:

> If banks are unable to follow such a procedure, they must either make frantic ex parte applications to the bankruptcy courts for relief from the stay or sit by and watch the debtors dissipate funds subject to setoff rights recognized in § 553.

*In re Carpenter,* 14 B.R. at 407. The foregoing excerpt from *Carpenter* was cited in *Kenney's Franchise Corp. v. Central Fid. Bank,* 22 B.R. 747 (W.D.Va.1982) (hereinafter referred to as *"Kenney's II"),* wherein the district court reversed the decision of the bankruptcy court in *Kenney's I.*

Because *Carpenter* was a liquidation case, the Court was not confronted with the problem of a debtor in need of a ready cash flow in order to maintain business

---

**3.** "The legislative history of the Reform Act indicates that the exercise of setoff rights was included in the automatic stay in order to protect ongoing businesses in reorganization cases and that there is little justification for applying it in liquidation cases." (Citation omitted.) *In re Carpenter,* 14 B.R. at 407.

operations. Nevertheless, the Court in *Kenney's II* found the rationale in *Carpenter* persuasive. Moreover, the Court in *Kenney's II* found that § 363 of the Bankruptcy Code mandated the result reached in *Carpenter.*

Section 363(a) of the Bankruptcy Code states as follows:

In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, *deposit accounts,* or other cash equivalents *in which the estate and an entity other than the estate have an interest.* (Emphasis added.)

Special protection is afforded cash collateral under § 363(c)(2), which provides that:

The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

In reference to the special protection afforded cash collateral under § 363 of the Bankruptcy Code, a noted commentator has stated:

The protection is offered not by reason of any nonbankruptcy law limitations inherent to cash collateral but rather in recognition of the unique nature of cash collateral and the risk to the entity with an interest therein arising from the consumption of the collateral in a rehabilitative effort in bankruptcy.

2 *Collier on Bankruptcy* ¶ 363.02, p. 363.-15 (15th ed. 1984).

The Court in *Kenney's II* determined that the bank had an interest under its "bank's lien" in the deposit account of the debtor. In the instant case, the Bank's lien arose in 1982 pursuant to Ga.Code Ann. § 41A–3511, which provides for a lien that is similarly beyond the scope of Article 9 of the Uniform Commercial Code.[4] The following summary stated in *Kenney's II* is applicable to the case *sub judice:*

It is the opinion of this Court that the assets of the debtor held by the Bank in the present case are cash collateral as defined in § 363(a). Accordingly, Kenney's could not use the proceeds of the checking account without the Bank's consent or the approval of the Court. No such approval was obtained in this case from either the Bankruptcy Court or the Bank. Under these circumstances, the Bank's actions in holding the funds in tact in a separate account until an adequate protection determination can be made is entirely appropriate.

*Kenney's II,* 22 B.R. at 750.

■ To clarify the nomenclature used herein, the Court adopts the definition of "setoff" found in *Baker v. National City Bank of Cleveland,* 511 F.2d 1016 (6th Cir.1975). In *Baker,* the Sixth Circuit Court of Appeals stated that:

The act of setoff is not complete until three steps have been taken: (1) the decision to exercise the right, (2) some action which accomplishes the setoff and (3) some record which evidences the right of setoff has been exercised.

*Baker v. National City Bank of Cleveland,* 511 F.2d at 1018. The exercise of the right of setoff is clearly stayed under § 362(a)(7) of the Bankruptcy Code. A permissible "freeze", on the other hand, involves no debit to the debtor's account and no application of the funds on deposit against the outstanding indebtedness from the debtor to the bank.

The conclusion reached in *Kenney's II,* as followed herein, potentially imposes a burden on a debtor undergoing reorganization under Chapter 13 or Chapter 11 of the Bankruptcy Code. Yet, this result is inescapable once the Court determines that the bank account in dispute constitutes cash collateral under § 363(a). The Court is optimistic that a majority of the disputes over bank deposits will be resolved by consent of the parties as provided in § 363(c)(2)(A) rather than by the debtor's racing to ap-

---

**4.** U.C.C. § 9–104(i). See footnote 2, *supra.*

**190**

pear before the Court for authorization to use cash collateral under § 363(c)(2)(B).

 Regardless of the practical implications of this opinion, this Court has determined that a "freeze" on encumbered bank accounts must be allowed so that the bank can protect its interest pending final resolution by the Court upon: (1) a motion by the bank for relief from the automatic stay to complete the setoff; (2) a motion by the debtor for authorization to use cash collateral; or (3) a complaint for turnover of funds. In accord with this decision is *In the Matter of Gazelle, Inc.*, 17 B.R. 617 (Bkrtcy.W.D.Wis.1982) ("freezing" of account by a bank does not constitute contempt or violation of § 362(a) of the Bankruptcy Code).

RELIEF FROM THE AUTOMATIC STAY

 The Bank seeks relief from the automatic stay to set off the frozen bank account representing a debt owing from the Bank to the Debtor against the debt on the line of credit owing from the Debtor to the Bank. To grant or withhold the requested relief is within the discretion of this Court and shall be governed by equitable principles. *In re Allbrand Appliance and Television Co.*, 16 B.R. 10, 8 B.C.D. 660 (Bkrtcy.S.D.N.Y.1981) (citing 4 *Collier on Bankruptcy* ¶ 553.02 at 553–10 (15th ed. 1979). Cf. *Bohack Corporation of Borden, Inc.*, 599 F.2d 1160, 1163 (2d Cir. 1979) (a case under Bankruptcy Act § 68); Hammon, "Setoff in Bankruptcy: Is the Creditor Preferred or Secured?", 50 Colo.L. Rev. 511, 523 (1979).). Specifically, the Court in *Allbrand*, 16 B.R. at 14, 8 B.C.D. at 663–664, stated the following:

> [The right of setoff] is discretionary and must be exercised, *inter alia*, in accordance with principles of equity. With this in mind, it has been contended by some that in rehabilitation and reorganization cases, where a setoff may have a deleterious effect upon the successful outcome of a case, setoff should be denied. (citations omitted.)

 Given the fact that the Debtor proposes to pay all of her creditors through an extension plan under Chapter 13, the Court finds that the Debtor would be facilitated in this effort by having access to the "frozen" funds. Accordingly, the motion for relief from the automatic stay shall be and is hereby DENIED. In lieu of the Bank's right to offset the mutual prepetition obligations, the Bank's claim in this proceeding shall be allowed as secured to the extent of $492.18, and the Debtor shall be and is hereby authorized to have access to the "frozen" funds in like amount.

IT IS SO ORDERED.