**In re Raymond Thayer NELSON, Debtor.**

**Raymond Thayer NELSON, Plaintiff,**

v.

**FIRST NATIONAL BANK & TRUST CO., EL DORADO, Kansas, Defendant.**

**Bankruptcy No. 80-10747.**
**Adv. No. 80-0473.**

United States Bankruptcy Court, D. Kansas.

Sept. 25, 1980.

Roger Green, El Dorado, Kan., for plaintiff.

Michael G. Coash, El Dorado, Kan., for defendant First Nat. Bank and Trust Co., El Dorado, Kan.

## MEMORANDUM OF DECISION

### STATEMENT OF THE CASE

ROBERT B. MORTON, Bankruptcy Judge.

Nelson's complaint seeks a determination that First National is in contempt for violating the automatic stay provisions of the Bankruptcy Code[1] and an order directing First National to return certain funds appropriated from the Nelson checking account and for reimbursement of Nelson's filing fee in respect of the instant complaint.

Nelson and his wife, Helen Nelson, opened a joint account with First National on March 3, 1980 by depositing $357.70. The signature card was signed by both Nelson and his wife.[2] On March 25, 1980, the two Nelsons signed a single promissory note to First National in the amount of $877.52.[3]

Mrs. Nelson did not join in Nelson's petition for Chapter 7 relief filed on May 19, 1980 nor did she file separately. Notice of the filing of Nelson's petition and of the initial meeting of creditors went forth by mail on May 21, 1980. The notice to First National was addressed to a branch office with which the Nelsons did business; there is no record of any return of the envelope for failure of delivery. Nelson's attorney

1. 11 U.S.C. § 362 (1979).

2. Defendant's Exh. A.

3. Defendant's Exh. B.

4. Defendant's Exh. C; testimony Paul Olson concerning his telephone conversation with Mr. Green, plaintiff's counsel.

also notified Paul Olson, an officer of the bank, by telephone on June 3, 1980 that the petition had been filed. An additional copy of the initial notice was received by the bank from debtor's attorney on June 4, 1980. The attorney also advised the bank officer that First National had no right to appropriate the post–bankruptcy funds.[4]

An officer of the bank had contacted Nelson on May 6, 1980 concerning the latter's failure to make a payment then due on the promissory note. Nelson failed to remit and on June 2, 1980, First National froze the Nelsons' account and refused to honor checks written by them against the account funds for family necessaries. A previous balance of $3.07 was in the account at that time plus additional June 2 deposits of $234.55 and $289.84. Those latter deposits consisted of post–bankruptcy earnings of Nelson and increased the June 2, 1980 balance to $527.46.[5] On June 6 First National unilaterally appropriated all monies then in the Nelson account ($516.46) and applied them on the promissory note indebtedness. The setoff is evidenced by the bank's written "advice of charge" dated June 6, 1980, which was directed to Raymond Nelson only.[6]

### MEMORANDUM OPINION

A creditor's right to offset mutual debts that arose between the debtor and such creditor before commencement of the bankruptcy case is specifically preserved, with certain exceptions, in § 553 of the Bankruptcy Code.[7] A setoff under § 553 *after* a bankruptcy case has commenced, however, is subject to the restraints of § 362.[8] Therefore, a creditor must obtain relief from the automatic stay before a setoff may be exercised *subsequent* to the filing of the petition or risk being held in contempt for violating the provisions of that section.

5. Plaintiff's Exh. 1.

6. Plaintiff's Exh. 2.

7. 11 U.S.C. § 553 (1979).

8. 11 U.S.C. § 362 (1979).

To the contrary, First National contends its setoff of the Nelson account balance was not stayed by § 362 because the debt owed by First National to Nelson arose after the commencement of the case and thus did not fall within the limitations of § 362(a)(7). As noted above, the source of the account funds which were appropriated by setoff June 6, 1980 consisted of deposits by Nelson on the preceding June 2. First National emphasizes that no deposit debt was owed to the Nelsons until the moment the June 2, 1980 deposits were credited and argues that because those deposits were post–petition First National's right of setoff did not come into existence until after commencement of the case and, ergo, was subject to no restraints.

■ In focusing on § 362(a)(7), First National has overlooked another applicable clause of that subsection. For, even if the setoff of post–petition deposits does not fall within the ambit of § 362(a)(7), nonetheless the setoff was in contravention of § 362(a)(6), which provides in part:

> "a petition filed . . . operates as a stay, applicable to all entities, of–(6) *any act* to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title." [9] (Emphasis supplied)

This provision "prevents creditors from attempting *in any way* to collect a prepetition debt." (Emphasis supplied). H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 342 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6298.

It is undisputed that the First National's claim against the debtor arose prior to the filing of the petition for relief. Although the funds setoff by First National were Nelson's post–bankruptcy earnings, and therefore, are not part of the debtor's estate, as provided in § 541(a)(6),[10] the act of setoff was nevertheless within the compass of the automatic stay created by § 362(a)(6). Absent court–granted relief from the automatic stay First National's setoff against Nelson's deposited funds was *an act* to collect First National's prepetition claim in violation of the § 362(a)(6) injunction.

■ Such an analysis appears fully consonant with the policies underlying the new Bankruptcy Code. There is no contention that Nelson's prepetition liability on the note is anything other than a routinely dischargeable debt under § 727(b).[11] The latter subsection explicitly discharges a debtor from all debts that arose before the date of the order of relief. The clear purpose of a discharge is to afford the honest debtor a 'fresh start'. That purpose would be thwarted if a creditor were to be allowed to collect a dischargeable debt from a debtor's post–petition earnings as First National did in this instance. Once a petition for relief has been filed a creditor setoff may be permitted only if and when the bankruptcy court has granted such relief from the automatic stay. This is the view of a leading secondary authority:

> In keeping with the general theory permeating the Code, the filing of the petition represents the time of cleavage, after which sums deposited with a bank may not be set off against the debtor's indebtedness to the bank. The bank may have a right of setoff as to the existing deposit balance when the petition is filed, but such right does not extend to subsequent deposits . . . . 4 *Collier on Bankruptcy*, ¶ 553.15(4) at 553–69–70 (15th Ed., 1980).

Cases under the Bankruptcy Act [12] are in accord. See *Reed v. Barnett National Bank*, 250 F. 983 (5th Cir., 1918); *Toof v. City National Bank*, 206 F. 250 (6th Cir. 1913).

■ First National further contends that even if the stay did apply to Nelson, it did not serve to prevent a setoff of the debt owed to Mrs. Nelson who was a joint owner of the account and a co–obligor on the note. Although in Kansas a joint tenancy bank

---

**9.** Ibid, § 362(a)(6).

**10.** 11 U.S.C. § 541(a)(6) (1979).

**11.** 11 U.S.C. § 727(b) (1979).

**12.** Bankruptcy Act of 1898, as amended.

account creates a presumption of equal ownership between the joint tenants, one co–tenant may demonstrate an ownership interest in the property greater than the interest created by operation of the presumption. A creditor's interest in the joint bank account, therefore, is limited to the interest of the co–tenant debtor. *Walnut Valley State Bank v. Stovall*, 223 Kan. 459, 574 P.2d 1382 (1978). The evidence in the present case established Nelson, not his wife, as the equitable owner of the entire account at the time of setoff. It was undisputed that the sole source of the money in the account at that time was Nelson's payroll check and that no contribution had been made by Mrs. Nelson. First National appeared to have that fact in mind when it documented the setoff *only* against Mr. Nelson's interest in the account. Advice of the charge against the account was directed to Mr. Nelson only; there was no indication there reflected of Mrs. Nelson as an owner of the account.[13]

The entire account should be and was covered by the automatic stay of § 362 so that First National's right of setoff could not be exercised without court permission once the petition for relief was filed.

■ The court finds that the setoff made by First National was in violation of § 362(a)(6) and hence void:

> In general, actions taken in violation of the stay will be void even where there was no actual notice of the existence of the stay. If the violation is willful there are ample powers to punish for contempt and to take other appropriate steps to negate the impact of the improper action. 2 *Collier on Bankruptcy*, ¶ 362.03, at 362–27 (15th Ed., 1980)

The same results obtained under the provisions of the old Bankruptcy Act and Rules. See *In re Hotel Martin Co.*, 83 F.2d 231 (2nd Cir. 1936); *Reed v. Barnett National Bank*, 250 F. 983 (5th Cir. 1918). There is ample evidence that First National had notice of the instant case prior to the debiting of the Nelson account on June 6, 1980. And, indeed, the bank officer handling the matter was even informed that it could not appropriate funds deposited after the filing of the petition.[14]

■ The court finds good cause exists for holding First National in contempt but foregoes any fine therefor. Nelson is granted judgment against First National for restoration of the appropriated funds in the amount of $516.46 and, in addition, for costs in the amount of $60.00.

The foregoing constitute findings of fact and conclusions of law as required by Bankruptcy Rule 752 and Rule 52(a) Federal Rules of Civil Procedure.

---

**13.** Plaintiff's Exh. 2.

**14.** Note 4, *supra*, and accompanying portion of the text.