In re Robert Clifton **CARPENTER** and Sherry S. Carpenter, Debtors.

**THIRD NATIONAL BANK IN NASHVILLE, Plaintiff,**

v.

Robert Clifton **CARPENTER,** Sherry S. Carpenter, and Larry Stewart, Trustee, Defendants.

Bankruptcy No. 381–00827.
Adv. No. 381–0176.

United States Bankruptcy Court,
M. D. Tennessee.

Sept. 28, 1981.

James Wm. Hofstetter, Jr., Nashville, Tenn., for plaintiff.

Robert L. Hudson, Nashville, Tenn., for debtors.

Larry Stewart, Nashville, Tenn., for trustee.

## MEMORANDUM

RUSSELL H. HIPPE, Jr., Bankruptcy Judge.

This adversary proceeding was initiated by the plaintiff bank filing a complaint seeking relief from the automatic stay of 11 U.S.C. § 362(a)(7)[1] in order that it might exercise an alleged right to setoff against a prepetition obligation of the debtors the sum of $318.35. The bank has prevented the debtors from withdrawing this sum from their checking account pending determination by the court of its setoff rights. The debtors have answered alleging that the action taken by the bank in preventing them from withdrawing this sum from their account violated the automatic stay and further alleging that the funds being withheld were the proceeds of their federal income tax refund which had been claimed in their schedules as exempt property and deposited in their account subsequent to the filing of their petition. The debtors also have counterclaimed for damages allegedly caused by seven checks having been returned for insufficient funds as a result of the $318.35 being withheld by the bank. The debtors seek both compensatory and punitive damages.

The funds at issue were withheld pursuant to the following procedure: As soon as the bank receives knowledge that one of its depositors has filed a Chapter 7 bankruptcy petition—this knowledge usually being obtained first through a bulletin issued by the Nashville Credit Bureau—it reviews the debtor's account and withholds or "freezes" an amount equal to the lowest balance in the account from the date of the filing of the bankruptcy petition to the date that it first received knowledge of it. The bank debits the debtor's account this amount and, if the bank is not asserting a setoff, forwards a bank check to the interim trustee. If the bank is asserting a setoff, the bank makes the check payable to itself. The check is held by the bank's legal department pending final disposition of a complaint which is filed seeking relief from the automatic stay.

The bank received knowledge of the filing of the debtors' petition through the credit bureau bulletin on March 23, 1981, and reviewed the debtors' account on March 24, 1981. The bank withheld the sum of $318.35 which represented the balance in the account on the date of filing, March 13,

---

1. (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

. . . .

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

. . . .

11 U.S.C. § 362(a)(7) (1979).

1981. The bank filed the complaint initiating this adversary proceeding on April 8, 1981.

Several commentators have expressed concern over the inclusion in the automatic stay of the 1978 Reform Act of the exercise of setoff rights in liquidation cases. Ahart, "Bank Setoff Under the Bankruptcy Reform Act of 1978," 53 Bankr.L.J. 205, 212–214 (1979); Freeman, "Setoff Under the New Bankruptcy Code: The Effect on Bankers," 97 Banking L.J. 484, 511–512 (1980). The legislative history of the Reform Act indicates that the exercise of setoff rights was included in the automatic stay in order to protect ongoing businesses in reorganization cases and that there is little justification for applying it in liquidation cases. H.R.Rep.No.595, 95th Cong., 1st Sess., 183 (1977), U.S.Code Cong. & Admin. News 1978, 5787.

Although § 553 is the provision of the Reform Act devoted to setoff, the withholding or "freezing" of funds subject to a setoff claim is addressed by § 542, the provision governing the turnover of property to the estate.

> Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of the trustee, except to the extent that such debt *may* be offset under section 553 of this title against a claim against the debtor.

11 U.S.C. § 542(b) (1979) (emphasis added).

The use of the phrase *may be offset* clearly contemplates that the setoff right has not been exercised. Obviously, if the debt had been set off, it could not be considered property of the estate. Thus, Congress has recognized a significant distinction between the withholding of payment and the exercise of the setoff right. In the following subsection banks are absolved of liability to trustees for paying checks prior to knowledge of the filing. 11 U.S.C. § 542(c) (1979). The statement in the legislative history of that subsection that it does not "permit bank setoff in violation of the automatic stay" is not applicable to § 542(b) and, in any event, is not inconsistent with this analysis. H.R.Rep.No.95–595, 95th Cong., 1st Sess. 369 (1977); S.Rep.No.95–989, 95th Cong., 2d Sess. 84 (1978).

The fact that the funds being withheld may have been claimed as exempt would not alter the result. Since all property interests of debtors initially pass into the estate under the Reform Act—including exempt property—§ 542(b) would be applicable whether the funds have been claimed as exempt or not. The earliest that property may be exempted from the estate in a liquidation case in this district is 15 days after the meeting of creditors, the deadline for filing objections to exemption claims.

In a recent opinion Bankruptcy Judge H. Clyde Pearson has concluded that a "freezing" of a checking account prior to receiving relief from the automatic stay constitutes a violation of the stay. *Kenney's Franchise Corp. v. Central Fidelity Bank*, 12 B.R. 390, 4 C.B.C.2d 1112 (Bkrtcy., W.D.Va., 1981). That opinion is distinguishable, however, in that it involved a reorganization case and the creditor had never filed a complaint seeking relief from the stay; the adversary proceeding was initiated by the Chapter 11 trustee. More significantly, the opinion focuses principally on the distinction between setoff rights and lien rights and makes no mention of § 542(b). In any event, Judge Pearson declined to impose any sanctions for the violation of the stay "since the 'freeze' was under a good faith claim." *Id.* 12 B.R. 390, 4 C.B.C.2d at 1118.

This court is of the opinion that in a liquidation case the withholding or "freezing" of funds subject to a valid setoff claim does not violate the automatic stay of 11 U.S.C. § 362(a)(7), provided that a complaint seeking relief from the stay is filed promptly thereafter. If banks are unable to follow such a procedure, they either must make frantic ex parte applications to the bankruptcy courts for relief from the stay or sit by and watch debtors dissipate funds subject to setoff rights recognized in § 553.

This conclusion does not resolve this dispute in favor of the bank, however, since in the opinion of the court it has failed to establish that it has a right to setoff the $318.35 under § 553. That section recognizes the right of a creditor to setoff a debt owing to the debtor "that arose before the commencement of the case" against a claim against the debtor "that arose before the commencement of the case." 11 U.S.C. § 553(a) (1979).

The bank's records indicate that on the eve of the filing of the debtors' petition the balance in their checking account was $28.35. These records also reflect that on the date their petition was filed a $10 check was paid and a $300 deposit received by the bank. There is no indication in the record as to whether these transactions occurred prior or subsequent to the debtors' petition being filed.

■ The burden is on the creditor asserting the setoff right to show that it comes within the parameters of 11 U.S.C. § 553. The bank has failed to carry the burden of proving that it was obligated to pay the $318.35 to the debtors' order immediately prior to their petition being filed. The record in this proceeding would indicate that the bank is entitled to setoff only $18.35.

This conclusion does not dispose of the remaining issues in favor of the debtors, however. There is no indication in the record as to when they acquired the $300 deposit. If acquired prior to filing their petition, a fact not inconsistent with the proposition that it may not have been credited to their account until after filing, it was an asset of the estate. Section 542(b) requires banks to forward to trustees deposits that are property of bankruptcy estates. There has been no suggestion on the part of the debtors that they had claimed this sum as exempt. (The IRS refund check which was claimed as exempt was not deposited until March 16, 1981.) Even had they done so, it would have been appropriate for the bank to debit their account and forward the funds to the trustee pending finalization of their exemption claims.

The debtors having failed to establish their right to the use of these funds as of the date that the checks in question were dishonored, their counterclaim for damages for wrongful dishonor must be dismissed.

The trustee has been included in this proceeding as a party defendant and has asserted no claim to these funds. He apparently has declined to do so in recognition of the debtors' right to amend their schedules to claim them as exempt or simply because the amount does not warrant the effort. Thus, the court is of the opinion that this matter should be concluded by awarding the $300 to the debtors as exempt property.

An appropriate order will be entered sustaining the right of the bank to setoff $18.35 and directing that the bank pay over to the debtors the sum of $300 plus interest thereon at the legal rate from March 24, 1981.