**In the Matter of GAZELLE, INC., B.E.L., Inc., Commercial Structures of Tomah, Inc., and Classroom Distributors, Inc., Debtors.**

**Bankruptcy Nos. LM11–81–01568, LM11–81–01569, LM11–81–01570 and LM11–81–01571.**

United States Bankruptcy Court, W. D. Wisconsin.

Feb. 4, 1982.

Johns, Flaherty & Gillette, S. C. by Galen W. Pittman, La Crosse, Wis., for First Bank of Tomah.

DeWitt, Sundby, Huggett & Schumacher, S. C. by Ronald W. Kuehn, Madison, Wis., for Gazelle, Inc., et al., debtors.

#### FINDINGS OF FACT

ROBERT D. MARTIN, Bankruptcy Judge.

1. Debtors are owners and holders of title of various real estate and buildings commonly known as 1713 Superior Avenue, Tomah, Wisconsin; real estate on Logan Street, Tomah, Wisconsin; warehouse building located on Highway 21 East, Byron Township, Wisconsin; buildings located on Norplex Drive, La Crosse, Wisconsin, machinery and equipment, automotive, furni-

ture, fixtures, inventory, accounts receivable, contracts, rights, monies, general intangibles and other properties set forth in the various petitions including life insurance policies and various other assets of whatsoever nature.

2. First Bank of Tomah has a valid, perfected security interest in all the above-described property of the debtors.

3. Each of the debtors filed a petition, schedules and statement of affairs seeking relief pursuant to Chapter 11 of Title 11, United States Code, on September 9, 1981. On September 11, 1981, this court entered an order for meeting of creditors, combined with notice thereof and automatic stays in each of the cases. That notice was promptly sent to each of the creditors of the debtors, including the First Bank of Tomah and the Small Business Administration, notifying them of a meeting of creditors to be held at the La Crosse County Courthouse on October 14, 1981, at 11:30 a. m. in La Crosse, Wisconsin, pursuant to 11 U.S.C. § 341(a). The date of the meeting of creditors was changed to October 7, 1981, at the request of the debtors, and the appropriate notice of the rescheduled meeting was sent to all creditors. The meeting of creditors was held at the La Crosse County Courthouse on October 7, 1981, at 11:30 a. m.

4. Since the date of filing, or shortly thereafter, the debtors have made no payments whatsoever on any of the accounts owing to the First Bank of Tomah including, but not limited to, payments for motor vehicles, general loans, the Small Business Administration loan, real estate loans, inventory loans and all miscellaneous and other loans of whatever nature and are in default of all loans owed to the First Bank of Tomah.

5. On or about October 25, 1981, the First Bank of Tomah filed a notice of request for conditioning or terminating stay and a separate notice of request for adequate protection in each of the cases.

6. Counsel for the debtors filed a timely objection to the applications by the First Bank of Tomah.

7. On November 10, 1981, this court issued a notice to creditors and other parties in interest in each of the cases, setting a preliminary hearing on the First Bank of Tomah's request for terminating or modifying stay and request for adequate protection. The hearing was to be conducted by telephone conference call. For cause shown at the preliminary hearing, in which the First Bank of Tomah chose to be unrepresented, the court ordered on November 30, 1981, that the stay continue pending a final hearing. The final hearing, originally set for December 18, 1981, was rescheduled for December 30, 1981, at 9:00 a. m.

8. A hearing was held before the court on December 30, 1981, and ultimately all of the exhibits introduced by both parties were accepted by this court. Both sides put on all of the witnesses they intended to produce with the following exceptions: the creditors intended to have their appraiser appear, but he was unable to appear; the debtors had intended to have Mr. Norman Von Haden, an officer of all debtor companies, appear, but he was unable to appear because of the serious illness of his wife.

9. Sometime in late September or early October, 1981, the First Bank of Tomah "froze" the approximately $9,000 worth of cash assets of the debtor corporations which were being held on account by the First Bank of Tomah. Each of the debtors objected to this "freeze" of assets, and at least one check presented for payment by Classroom Distributors, Inc., on October 16, 1981, was denied payment by the Bank. The funds "frozen" by the Bank are still in the possession of the First Bank of Tomah in a separate account and are available to be distributed pursuant to an order of this court.

10. The "freeze" of cash assets of the debtors took place in advance of the date that the Bank sought relief from the stay imposed by 11 U.S.C. § 362.

11. The debtors have continued to actively operate all four of the businesses. The debtors have, since filing the petitions, secured contracts to move two buildings (which in the past was a significant portion

of the business of Classroom Distributors, Inc.) and have sought, but have not secured, new contracts for construction of buildings. The debtors continue to lease the buildings that they own to other tenants, to the extent that the debtors do not use the premises. Efforts have been made to maintain contacts with dealers in this region and around the country who have in the past sold Gazelle, Inc. products, but limited sales of those products have taken place since the filing of these petitions. In conducting their business, the debtors have depleted and reduced the value of inventories and paid salaries and wages.

12. The debtors have cut back their employee force to the point where only officers of the companies are regularly employed.

13. The buildings and equipment of the debtors have been maintained and are in a good condition. There is little evidence of any diminution of value of any of the real properties of the debtors. All equipment which is not in use is being stored and equipment which is in use is being properly maintained. Given the small amount of business that the corporations have been able to generate in the last several months, there is little possibility of substantial diminution of value of any portion of the equipment which is being occasionally used. There is no evidence that any of the debtors' property, real or personal, will appreciate in the near future.

14. The debtors have employed API Management Consultants of Bayside, Wisconsin, for the purpose of assisting them in that reorganization effort. API Management Consultants has prepared business plans for the corporations which have been, in part, submitted to the court as exhibits in this matter. Said plans do not appear to be a reasonable basis upon which a plan of reorganization could be pursued.

15. On or about December 18, 1981, an offer for adequate protection was made by the debtors to the First Bank of Tomah. That offer for adequate protection was in the form of a detailed plan (although not a formal plan of reorganization in the form contemplated by the Bankruptcy Code) and delivered to the president of the First Bank of Tomah. In furtherance of the offer of adequate protection, the officers of the debtors have turned over two insurance policies which were pledged to the First Bank of Tomah, affording the Bank the opportunity to obtain approximately $24,000 in cash to be applied to the debts of the debtor corporations. The remaining proposals that offered to afford adequate protection depended specifically upon the outcome of pending lawsuits and the infusion of new capital for the undertaking of a manufacturing program by Gazelle, Inc. In each particular, these proposals offer dubious future value to the debtor and the Bank, are speculative in nature, and offer no present value in exchange for the collateral to be used or depreciated.

16. The only additional protection being offered the First Bank of Tomah is the increase in value of certain fittings, which are the primary inventory asset of Gazelle, Inc. That increase will come about only if cash collateral of the Bank is used to purchase tooling and product for pipe and gutter production. During the three to six months necessary to produce pipe and gutter, the business would be run by two of its officers for a combined salary of $2,500 per month and would incur heat and telephone expenses and certain expenses of advertising. No payments to secured creditors are contemplated during this time of initial production. Funding for the proposed production would come from continued business operations, including sales of inventory, which have produced, from the September 21, 1981, filing date to the date of the hearing, approximately $7,000 in cash and an account receivable of $7,000. In addition, funds would be obtained from the liquidation of certain vehicles contended not to be covered by the First Bank of Tomah's security interest. The net liquidation value of the vehicles by international sale in thirty to sixty days would be approximately $25,000. The result would be that until the vehicles were sold, the business would operate from profits from labor, if any, and liquidation of collateral of the Bank.

17. It is undisputed that the Bank is grossly undersecured. No valuation of the property appears to exceed the $579,626 due on the Small Business Administration obligation. The only creditable appraisal indicates the fair market value of real property at $172,200 and fair market value of equipment at $160,000. Even if understated by 50 percent, it would appear that the corporation has no equity in the assets which are security for the Small Business Administration loan.

## CONCLUSIONS OF LAW

1. The assets "frozen" by the First Bank of Tomah are cash collateral as defined in 11 U.S.C. § 363(a). As such, their use by the debtors was prohibited by 11 U.S.C. § 363(c)(2) without the consent of the First Bank of Tomah or authorized by the court after notice and a hearing. Central to any such authorization is a determination that adequate protection to the secured party would be provided. No such authorization was sought prior to this proceeding and no consent or authorization obtained by the debtors.

2. The refusal of the Bank to release cash collateral by "freezing" the account did not constitute a contempt or violation of 11 U.S.C. § 362(a).

3. The protection offered the First Bank of Tomah by the debtors is not adequate to prevent the deterioration of the Bank's position due to the increasing interest indebtedness of the debtors to the Bank and the lack of appreciation in collateral or substitution of collateral to offset that increasing indebtedness. No protection proposal offered by the debtors has provided compensation for the deterioration of the Bank's position during the pendency of this case.

4. The debtors have no equity in the collateral of the Bank.

5. No effective reorganization of the debtors has been proposed nor is any probable.

6. The debtors' manufacturing operations have terminated for all practical purposes and, therefore, neither the real estate nor the personal property, which are assets of the debtors, are necessary for the debtors' continued operation pending the proposal of a plan of reorganization.

Upon the foregoing findings and conclusions, it is hereby

ORDERED that the objection of the debtors be and hereby is overruled, and it is further

ORDERED that the stay of 11 U.S.C. § 362 be modified to permit the First Bank of Tomah to proceed against its collateral.

Judgment may be entered accordingly.