KENNEY'S FRANCHISE CORP., Donald W. Huffman, Appellees,

v.

CENTRAL FIDELITY BANK NA, LYNCHBURG, Appellant.

Civ. A. No. 81–0259(R).
Bankruptcy No. 7–80–0219.

United States District Court, W. D. Virginia, Roanoke Division.

Aug. 24, 1982.

James F. Douthat, George A. McLean, Jr., Roanoke, Va., for appellees.

Charles F. Barnett, Jr., Roanoke, Va., for appellant.

Donald Huffman, Roanoke, Va., trustee.

## MEMORANDUM OPINION

TURK, Chief Judge.

Appellant Central Fidelity Bank has appealed from an order of the Bankruptcy Court for the Western District of Virginia directing the Bank to turn over the debtor's funds with appropriate interest.

The facts of this case were stipulated by the parties as follows. On December 21, 1978, Kenney's Franchise Corporation (Kenney's) opened a checking account with the Central Fidelity Bank (Bank). The account was set up in the regular course of business and used for the purposes of a general checking account. In March, 1979, Central Fidelity entered into a loan with Kenney's Franchise Corporation for approximately $95,000.00 secured by fast food restaurant equipment and fixtures worth approximately $69,000.00. On March 5, 1980, Kenney's Franchise Corporation filed a Chapter 11 petition in the Bankruptcy Court, at which time the balance remaining due on the loan was approximately $63,000.00. On March 6, 1980, Central Fidelity learned of the Chapter 11 petition and proceeded to administratively "freeze" Kenney's Franchise Corporation's checking account with a balance of $12,077.81. The Bank did not apply the proceeds of the checking account to satisfy the indebtedness and merely left the checking account balance intact. The Bank,

however, did not file a complaint seeking relief from the provisions of the automatic stay. 11 U.S.C. § 362(a)(7) (1979). Appellants subsequently filed this adversary proceeding in the Bankruptcy Court challenging the propriety of the Bank's actions.

The Bankruptcy Court, in an opinion entered on June 26, 1981, held the Bank's "freezing" of the checking account to be improper and ordered that Central Fidelity turn over the impounded funds with appropriate interest. The court reasoned that the Bank's assertion of a "bank's lien" by means of the account "freeze" is nothing more than an attempted postpetition setoff violative of "the spirit and purpose of 11 U.S.C. § 362, the automatic stay." *In re Kenney's Franchise Corp.*, 12 B.R. 390, 394 (Bkrtcy.W.D.Va.1981). In essence, the Bankruptcy Court held the Bank's postpetition attempt to administratively freeze Kenney's checking account to constitute a violation of the automatic stay. It is the opinion of this court that the Bankruptcy Court's literal interpretation of § 362 is erroneous. Instead, appropriate resolution of this issue involves consideration of not one, but a number of provisions of the bankruptcy code. Accordingly, the opinion of the Bankruptcy Court will be reversed and remanded for further proceedings consistent with this memorandum opinion.

It is clear from the record in this case that the Bank did not attempt to apply Kenney's checking account balance to its outstanding loan indebtedness. In essence, no setoff was attempted by the Bank in this case. Instead, the Bank merely held the funds in a separate account pending judicial resolution of its right to setoff. In fact, the Bankruptcy Judge noted in his opinion:

> On March 6, 1980, the Bank learned of the Chapter 11 petition and thereupon "froze" the checking account with a balance of $12,077.81 which account remains frozen to this date and there has been no application of the proceeds of the checking account to the satisfaction of the indebtedness; in other words, no setoff.

12 B.R. at 391.

■ Accordingly, while section 553 is the statutory provision dealing with setoff, "the withholding or 'freezing' of funds subject to a setoff claim is addressed by § 542, the provision governing the turnover of property to the estates." *In Re Carpenter*, 14 B.R. 405 (Bkrtcy.M.D.Tenn.1981). Section 542(b) provides that:

> Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

The bankruptcy court in *In Re Carpenter* applied section 542(b) to adjudicate the propriety of a bank's administrative freeze of a depositor's checking account following the depositor's filing of a Chapter 7 petition. The court, referring to section 542(b), reasoned that:

> The use of the phrase *may be offset* clearly contemplates that the setoff right has not been exercised. Obviously, if the debt had been set off, it could not be considered property of the estate. Thus, Congress has recognized a significant distinction between the withholding of payment and the exercise of the setoff right. In the following subsection banks are absolved of liability to trustees for paying checks prior to knowledge of the filing. 11 U.S.C. § 542(c) (1979). The statement in the legislative history of that subjection that it does not "permit bank setoff in violation of the automatic stay" is not applicable to § 542(b) and, in any event, is not inconsistent with this analysis. H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 369 (1977); S.Rep.No. 95–989, 95th Cong., 2d Sess. 84 (1978). . . .

This court is of the opinion that in a liquidation case the withholding or "freezing" of funds subject to a valid setoff claim does not violate the automatic stay of 11 U.S.C. § 362(a)(7), provided that a complaint seeking relief from the stay is filed promptly thereafter. If banks are unable to follow such a proce-

dure, they either must make frantic ex parte applications to the bankruptcy courts for relief from the stay or sit by and watch debtors dissipate funds subject to setoff rights recognized in § 553.

14 B.R. at 407. The automatic stay provision of the Bankruptcy Code applies with equal force to Chapter 7 liquidation and Chapter 11 reorganization cases. *See* 11 U.S.C. § 362(a)(7). Application of the opinion in *Carpenter* to the facts of the present case mandates that the opinion of the Bankruptcy Court in this case be reversed. The Bank has not received adequate protection and, accordingly, does not have to turn over the funds to the debtor without the approval of the court. The Bank's action in administratively freezing the debtor's checking account does not constitute a violation of the automatic stay.

■ Moreover, application of section 363 mandates a similar result. Section 363 provides, in pertinent part, that:

a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in which the estate and an entity other than the estate have an interest.

b) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

c) (1) if the business of the debtor is authorized to be operated under section 721, 1108, or 1304 of this title [11 USCS § 721, 1108, or 1304] and unless, the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease

in accordance with the provisions of this section.

Section 362(a) specifically includes "deposit accounts" within the definition of cash collateral. *See also, Freeman,* "Setoff under the New Bankruptcy Code: The Effect on Bankers," 97 Banking Law Journal 484, 506 (1980); 2 *Collier on Bankruptcy,* 15th Ed., § 363.02, p. 363–15 (1981). Section 363(c)(2) provides that the trustee in bankruptcy may not use cash collateral without the authorization of the bankruptcy court, following notice and hearing. In essence, considering Kenney's checking account to be cash collateral pursuant to § 362, the Bank acted properly in not allowing the debtor to use the checking account without prior court approval. In this situation "[w]hile the creditor bank is not permitted to set off and apply the deposit account proceeds to the reduction or satisfaction of the claim against the debtor, the DIP (debtor-in-possession) (or a trustee if one is appointed) may not draw upon the cash in the deposit account absent either the consent of the creditor bank or a court order." *Freeman* at 506. Such a solution was reached by the bankruptcy court in *Matter of Gazelle, Inc.,* 17 B.R. 617 (Bkrtcy.W.D.Wis.1982). In *Gazelle,* the bank froze debtor's cash assets in advance of the date that the bank sought relief from the automatic stay. In this Chapter 11 case, the court held that:

1. The assets "frozen" by the First Bank of Tomah are cash collateral as defined in 11 U.S.C. § 363(a). As such, their use by the debtors was prohibited by 11 U.S.C. § 363(c)(2) without the consent of the First Bank of Tomah or authorized by the court after notice and a hearing. Central to any such authorization is a determination that adequate protection to the secured party would be provided. No such authorization was sought prior to this proceeding and no consent or authorization obtained by the debtors.

2. The refusal of the Bank to release cash collateral by "freezing" the account did not constitute a contempt or violation of 11 U.S.C. § 362(a).

It is the opinion of this court that the assets of the debtor held by the Bank in the present case are cash collateral as defined in section 363(a). Accordingly, Kenney's could not use the proceeds of the checking account without the Bank's consent or the approval of the court. No such approval was obtained in this case from either the bankruptcy court or the Bank. Under these circumstances, the Bank's actions in holding the funds intact in a separate account until an adequate protection determination can be made is entirely appropriate. Accordingly, the opinion of the Bankruptcy Court will be reversed and remanded for further proceedings not inconsistent with this Memorandum Opinion.

An appropriate order will be entered.