**In re WILDCAT CONSTRUCTION COM-
PANY INCORPORATED, Debtor.**

**Bankruptcy Case No. 85–248.**

United States Bankruptcy Court,
D. Vermont.

Feb. 21, 1986.

Douglas J. Wolinsky, of Burlington, Vt.,
for Franklin-Lamoille Bank, a creditor.

Memorandum Decision

FRANCIS G. CONRAD, Bankruptcy
Judge.

In the context of a motion for extraordinary relief, this Court is presented with the

so-called banker's dilemma. The bank, a creditor of this Chapter 11 debtor's, has moved ex parte for relief from stay and for an order prohibiting the use of cash collateral. The bank asks us to prohibit the debtor from drawing on its checking accounts with the bank, against which it asserts a statutory right of setoff. Because we hold that a creditor in the bank's position is protected by the Code as a matter of course, and because this creditor has failed to show extraordinary circumstances indicating irreparable damage warranting ex parte relief, we cannot grant either of these motions.

Wildcat Construction Company, Inc., filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on December 26, 1985. The debtor has two checking accounts at the Franklin-Lamoille Bank ("bank") with a combined balance of $2083.03. Some seven weeks later, on February 14, 1986, the bank, to which the debtor allegedly owes in excess of $138,-000.00, moved for ex parte relief from the automatic stay imposed by 11 U.S.C. § 362(a) and for an ex parte order prohibiting the use of cash collateral. The bank asserts a common law right to offset the debt with the money in the debtor's checking accounts, which it characterizes as cash collateral by virtue of 11 U.S.C. § 506(a), and is concerned that the debtor may write checks against these accounts.

To support its prayer for ex parte relief, the bank has submitted a motion verified by its agent, pursuant to 11 U.S.C. § 362(f) and Bankruptcy Rule 4001(c), alleging that the debtor: owes the bank over $138,000.00 for money lent and not repaid; has $2083.03 on deposit in the bank in two identified checking accounts; has no equity in these accounts; has not moved the Court for permission to use cash collateral; and should not be given notice of the motion, for "it may well remove its funds from the subject checking accounts prior to an appropriate order issuing from this Court, which action would cause irreparable damage to the Applicant." In light of these averred facts, the bank asks us to lift the stay ex parte or, at least, to issue an ex parte order prohibiting the debtor from drawing on the two checking accounts.

Under Vermont law, the bank has a "lien" on the funds of a customer that come into the bank's possession in the regular course of its business, "and has the right to set off any matured debt against such funds without direction or authority from such customer." *In re Nutting*, 44 B.R. 233, 237 (Bkrtcy.D.Vt.1984), citing *Goodwin, Trustee v. Barre Savings Bank & Trust Company*, 91 Vt. 228, 235, 100 A. 34 (1917). The leading case is *New York County National Bank v. Massey*, 192 U.S. 138, 24 S.Ct. 199, 48 L.Ed. 380 (1903); see also Loyd, The Development of Setoff, 64 University of Pennsylvania Law Review 541 (1916). The debtor is a creditor of the bank's to the extent of the funds on deposit. *Caledonia National Bank v. McPherson*, 116 Vt. 328, 330, 75 A.2d 685 (1950); see *In re Edgins*, 36 B.R. 480, 483, 10 C.B.C.2d 120 (Bkrtcy. 9th Cir.1984).

The Bankruptcy Code recognizes a bank's right to setoff. Subject to certain specified exceptions, 11 U.S.C. § 553(a) provides that:

> this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case
>
> . . .

The exceptions include a claim acquired from an entity other than the presumably insolvent debtor within 90 days of filing the petition, 11 U.S.C. § 553(a)(2), and a debt incurred by a presumably insolvent debtor within 90 days of filing for the purpose of obtaining a right of setoff, 11 U.S.C. § 553(a)(3), *Goldstein v. Franklin Square National Bank*, 107 F.2d 393 (2d Cir.1939).

Under 11 U.S.C. § 362(a)(7), however, the automatic stay imposed once a petition in bankruptcy has been filed expressly precludes:

> the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor.

The purpose of the stay against exercising the right to set-off, of course, is to prevent

further desiccation of the debtor's cash flow through the loss of bank accounts and accounts receivable. An ongoing business striving to reorganize under Chapter 11 especially needs the protection of the automatic stay. Compare *In re Carpenter*, 8 B.C.D. 168, 14 B.R. 405, 407 (Bkrtcy.M.D. Tenn.1981). As commentators have pointed out, "[i]f the bank could freeze all bank accounts upon the filing of the petition, whatever chances the debtor may have had for rehabilitation would probably vanish without the use of its bank balances." Weintraub and Resnick, Bankruptcy Law Manual, 5.10[3] (1986).

██ Although the automatic stay prohibits exercising the right of setoff, it does not extinguish the right itself. The creditor's ability to offset the debt is stayed pending an orderly examination of the parties' rights by the Court. See *In re Garcia*, 9 B.C.D. 905, 906, 23 B.R. 266, 267 (N.D.Ill.1982); *In re Peabody*, 51 B.R. 157, 159 (Bkrtcy.D.Me.1985); *In re Conti*, 50 B.R. 142, 149 (Bkrtcy.E.D.Va.1985). The money in the bank accounts is property of the estate under 11 U.S.C. § 541(a)(1), which comprises "all legal or equitable interests of the debtor in property as of the commencement of the case." Before a creditor may offset a debt with estate property in its possession, it must obtain relief from stay under 11 U.S.C. § 362(d). See *United States on Behalf of I.R.S. v. Norton*, 717 F.2d 767, 771 (3d Cir.1983); *In re Conti*, 50 B.R. 142, 149 (Bkrtcy.E.D.Va. 1985); *In re Nelson*, 6 B.C.D. 985, 986, 6 B.R. 248, 249, 2 C.B.C.2d 1288 (Bkrtcy.D. Kan.1980). See, generally, Freeman, Setoff Under the New Bankruptcy Code, 97 Banking Law Journal 484 (1980); Ahart, Bank Setoff Under the Bankruptcy Reform Act of 1978, 53 American Bankruptcy Law Journal 205 (1979).

██ Although the bank must seek relief from stay from the Court before it may act, the debtor in possession is similarly required to obtain either the authorization of the Court or the consent of the bank before drawing on accounts that the bank has rights in. Section 506(a) of the Code provides in pertinent part that:

An allowed claim of a creditor ... that is subject to setoff under section 553 of this title, is a secured claim ... to the extent of the amount subject to setoff ... and is an unsecured claim to the extent that ... the amount so subject to setoff is less than the amount of such allowed claim.

A claim is deemed "allowed" unless a party in interest objects to the claim, 11 U.S.C. § 502(a). If the claim is indeed allowed and if the bank's right to setoff does not fall within the exceptions set out in 11 U.S.C. § 553(a)(1)–(3), the funds in the debtor's bank accounts represent the collateral for the bank's secured claim. The Code specifically defines "cash collateral" to include "deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest ..." 11 U.S.C. § 363(a). Under § 363(c)(2), a trustee or debtor in possession may not use cash collateral unless:

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

The players, both the bank and the Chapter 11 debtor, are frozen in place: the bank by the automatic stay, 11 U.S.C. §§ 362(a)(7) and 553(a), and the debtor by the prohibition against using cash collateral, 11 U.S.C. §§ 363(c)(2) and 506(a). See *In re Edgins*, 36 B.R. 480, 483, 10 C.B.C.2d 120 (Bkrtcy. 9th Cir.1984).

Alarmed that a debtor might nevertheless dissipate the funds deposited with the bank, certain banks on learning of the petition have refused to honor checks or permit withdrawals from the debtor's accounts, giving rise to litigation and law review articles analyzing whether such a "freeze" violates the automatic stay. Decisions holding that freezing the debtor's accounts in these circumstances does not violate the stay include *Stann v. Mid American Credit Union*, 39 B.R. 246, 11 C.B.C.2d 113 (D.Kan.1984) (Chapter 7); *In re Edgins*, 36 B.R. 480, 10 C.B.C.2d 120 (Bkrtcy.

9th Cir.1984) (Ashland, B.J., dissenting) (Chapter 13); *Kenney's Franchise Corp. v. Central Fidelity Bank NA*, 9 B.C.D. 675, 22 B.R. 747 (W.D.Va.1982), reversing *In re Kenney's Franchise Corporation*, 7 B.C.D. 1281, 12 B.R. 390, 4 C.B.C.2d 1112 (Bkrtcy.W.D.Va.1981) (Chapter 11); *In re Owens-Peterson*, 39 B.R. 186 (Bkrtcy.N.D. Ga.1984) (Chapter 13); *In the Matter of Gazelle, Inc.*, 17 B.R. 617 (Bkrtcy.W.D.Wis. 1982) (Chapter 11); *In re Carpenter*, 8 B.C.D. 168, 14 B.R. 405 (Bkrtcy.M.D.Tenn. 1981) (Chapter 7). See also Weintraub and Resnick, Freezing the Debtor's Account: A Banker's Dilemma Under the Bankruptcy Code, 100 Banking Law Journal 316 (1983); Groschadl, "Freezing" the Debtor's Bank Account: A Violation of the Automatic Stay?, 57 American Bankruptcy Law Journal 75 (1983). Other courts have held that the stay prohibits freezing the debtor's bank accounts: *Cusanno v. Fidelity Bank*, 10 B.C.D. 793, 29 B.R. 810 (E.D.Pa. 1983), affirming *In re Cusanno*, 8 B.C.D. 989, 17 B.R. 879 (Bkrtcy.E.D.Pa.1982), vacated and remanded without opinion, 734 F.2d 3 (3d Cir.1984) (Chapter 13); *In re LHG Resources, Inc.*, 34 B.R. 202, 9 C.B. C.2d 861 (Bkrtcy.W.D.Tex.1983) (Chapter 11); *In re Executive Associates, Inc.*, 24 B.R. 171, 7 C.B.C.2d 605 (Bkrtcy.S.D.Tex. 1982) (Chapter 11).

Despite this body of case law and commentary, the issue has not been addressed in this jurisdiction, surely a source of the bank's uneasiness here. Although we need not decide it in this case, we are inclined to believe that a refusal to honor checks and permit withdrawals from the bank accounts of the debtor in possession before a judicial determination has been made of the rights of the parties is both a violation of the automatic stay and, ordinarily, quite superfluous.

Courts that have concluded that freezing the debtor's bank accounts does not violate the stay have relied on various arguments. Several decisions have responded to the holding of *In re LHG Resources*, 34 B.R. at 203, and *In re Executive Associates, Inc.*, 24 B.R. at 172, that 11 U.S.C. § 362(a)(7), which expressly prohibits setoffs, also prohibits the freezing of bank accounts, which is tantamount to a setoff, by distinguishing a setoff from a freeze. The District Court in a decision in *Stann v. Mid American Credit Union*, 39 B.R. at 248–49, indicates three differences: unlike a freeze, a setoff requires an overt act; a freeze, unlike a setoff, adjusts the rights of the parties *inter se;* and a freeze is a necessary adjunct to the right of setoff since the debtor will not be able to withdraw the funds before a judicial determination of the bank's right to setoff. The Bankruptcy Court in deciding *In re Owens-Peterson*, 39 B.R. at 189, emphasized that a freeze "involves no debit to the debtor's account and no application of the funds on deposit against the outstanding indebtedness from the debtor to the bank; and the Court in *In re Carpenter*, 14 B.R. at 405, similarly leaned on "a significant distinction between the withholding of payment and the exercise of the setoff right." Compare Groschadl, "Freezing" the Debtor's Bank Account: A Violation of the Automatic Stay?, 57 American Bankruptcy Law Journal 75, 76–77 (1983) (distinguishing states such as Pennsylvania where setoff is exercised by operation of law from states that require an overt act).

■ Whether refusing to honor checks drawn on a debtor's bank accounts constitutes an insufficiently "overt" act or whether the bank must actually apply the deposited funds against the debt to the bank to bring the freeze within the prohibition of 11 U.S.C. § 362(a)(7) is not critical. Regardless whether freezing bank accounts is a setoff or tantamount to a setoff, it clearly constitutes "an unauthorized interference with the property of the Chapter 11 debtor without leave of the court." *In re Executive Associates*, 24 B.R. at 172; *In re LHG Resources, Inc.*, 34 B.R. at 203. If not proscribed by § 362(a)(7), a bank's act of exercising exclusive control over such funds violates § 362(a)(3), which forbids:

> any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate ...

Compare *Cusanno v. Fidelity Bank*, 29 B.R. at 812 (noting that freezing debtors'

account was tantamount to removing the funds from their possession in violation of § 362(a)(3)). The Bankruptcy Appellate Panel for the Ninth Circuit criticizes this conclusion of the District Court's in *Cusanno* because "[t]he debtor parted with possession or ownership of the funds in question when he made the deposit prior to bankruptcy," *In re Edgins,* 36 B.R. at 484. "The bank account represents funds which the bank owes to the debtor," *Edgins* at 483, and in which the debtor therefore has at least an equitable if not legal interest, *In re Cusanno,* 17 B.R. at 881. Such an interest in property at the commencement of the case constitutes property of the estate under 11 U.S.C. § 541(a)(1). More important, neither possession nor ownership of the funds is essential, for 11 U.S.C. § 362(a)(3) has since been amended to clarify that the "exercise of control over property of the estate" comes within its prohibition. Thus, however we characterize freezing a bank account, as the initial overt act toward a setoff, or as tantamount to a setoff, or simply as the securing of exclusive control over funds in which the debtor has at least an equitable interest, the freeze is a violation of the automatic stay.

With what strikes us as inordinate concern, several Courts have pointed out that the funds on deposit with the bank represent cash collateral under 11 U.S.C. § 506(a) and § 363(a), which the debtor may not use without the Court's permission or the bank's consent under 11 U.S.S. § 363(c)(2). See *Kenney's Franchise Corp. v. Central Fidelity Bank,* 22 B.R. at 749; *In re Owens-Peterson,* 39 B.R. at 189; *Matter of Gazelle,* 17 B.R. at 620. Compare Weintraub and Resnick, Freezing, the Debtor's Account: A Banker's Dilemma Under the Bankruptcy Code, 100 Banking Law Journal 316, 321–22 (1983); Groschadl, "Freezing" the Debtor's Bank Account: A Violation of the Automatic Stay?, 57 American Bankruptcy Law Journal 75, 77 (1983); Freeman, Setoff Under the New Bankruptcy Code: The Effect on Bankers, 97 Banking Law Journal 484, 506 (1980). Unquestionably, if the funds in the bank accounts are indeed cash collateral, that is, if the bank has a valid claim within 11 U.S.C. § 506(a), subject to a setoff not defeated by the exceptions in 11 U.S.C. § 553(a), then the debtor in possession must obtain the Court's authorization or the bank's consent before drawing on the funds, 11 U.S.C. § 363(c)(2). See *Cusanno v. Fidelity Bank,* 29 B.R. at 812 (recognizing the requirement of § 363 to obtain approval or consent in a Chapter 13 case). Since, if the bank is right about the status of the funds it is holding in the debtor's accounts, the debtor may not use this cash collateral in any event, freezing the accounts hardly seems necessary. On the other hand, if the bank is mistaken, if its claim is disallowed or its ostensible right to setoff falls within the exceptions of § 553(a), then the bank has no right to preclude access to the funds in the first place.

In reply to the argument that, if its right to setoff is valid, the bank is protected in any event by the prohibition against using cash collateral, several decisions have cited 11 U.S.C. § 506(b) as an independent ground for freezing bank accounts. *Stann v. Mid American Credit Union,* 39 B.R. at 248 (freeze is implied by § 542(b) in Chapter 7 case); *In re Edgins,* 36 B.R. at 483 (freeze countenanced by § 542(b) in Chapter 13 case); *In re Carpenter,* 14 B.R. at 407 (withholding or freezing funds subject to setoff addressed by § 542(b) in Chapter 7 case). See Weintraub and Resnick, Freezing the Debtor's Account: A Banker's Dilemma Under the Bankruptcy Code, 100 Banking Law Journal 316, 323–24 (1983). Section 542(b) indicates that, except as provided in § 362(a)(7), which stays the bank's right to setoff, a debt that may be offset under§ 553 is excepted from the requirement to turn property of the estate over to the trustee or, pursuant to 11 U.S.C. § 1107(a), the debtor in possession. These Courts interpret § 542(b) as "allow[ing] a creditor of the estate who may have a right to setoff funds owing to the debtor or the estate, to defer payment pending a hearing on the right to setoff," *In re Edgins,* 36 B.R. at 483. We are rather more persuaded by the dissent in *In re Edgins,* which succinctly observed:

Under § 542(b) an entity is required to turnover property of the debtor except to

the extent it is subject to being offset in § 553. The setoff in § 553 is subject to the automatic stay of § 362(a)(7). The administrative freeze is tantamount to a setoff. The bank should have asked for relief from the stay.

*Edgins* at 485. A further difficulty with a reading of § 542(b) that transforms an exception to the requirement to turn property of the estate over to the trustee into an independent justification for not permitting the debtor in possession to draw on its bank accounts is that the setoff to which the accounts may be subject has yet to be established.

Indeed, perhaps the most fundamental problem with countenancing the freezing of the debtor's bank accounts before any judicial determination of the rights of the parties has been made is that it begs the critical question, assuming in advance the precondition for its validity. This position converts a bank's potential right to setoff into an allowed claim at the outset. These Courts "seem to assume that the bank has the right to make the initial determination of which bank accounts are cash collateral which the debtor may not use ..." *Cusanno v. Fidelity Bank*, 29 B.R. at 813. The freeze is essentially an extra-judicial temporary restraining order. We must not delegate to one of the parties the judicial responsibility of deciding whether the funds in the accounts are cash collateral and of enforcing the statutory prohibition against using such cash collateral.

■ Both parties are in any case prevented from proceeding, the bank by the automatic stay and the debtor by an obligation to obtain permission or consent before using cash collateral. See *In re Edgins*, 36 B.R. at 483; *Kenney's Franchise Corp. v. Central Fidelity Bank*, 22 B.R. at 749. Before the classification of a bank account has been determined, "neither party has the authority to take action affecting the funds," *Cusanno v. Fidelity Bank*, 29 B.R. at 813. The bank may not engage in self-help, compare *In re Garcia*, 23 B.R. at 267. The debtor who withdraws funds in a bank account that may represent cash collateral, in turn, risks violating 11 U.S.C.

§ 363(c)(2) and incurring the penalties. See Standards and Sanctions for the Use of Cash Collateral Under the Bankruptcy Code, 63 Texas Law Review 341 (1984). We believe this statutory "stalemate," *Edgins* at 483, adequately protects the parties without resort to a freeze by the bank. "Absent proof the court will assume that the debtor has not used cash collateral contrary to law." *In re Executive Associates, Inc.*, 24 B.R. at 172–73. We refuse to presume either that most debtors are profligate or that most banks are avaricious. Moreover, the Code provides a recourse to both the bank and the debtor. The bank may ask for relief from stay under 11 U.S.C. § 362(d) to exercise its right to setoff, and the debtor may move for authority to use the cash collateral under 11 U.S.C. § 363(c)(2)(B). *In re Edgins*, 36 B.R. at 483. Either party may file for a declaratory judgment to determine the status of the bank accounts. *Edgins* at 483; *Cusanno v. Fidelity Bank*, 29 B.R. at 813. Finally, if the bank "believes that a Chapter 11 debtor is using cash collateral contrary to the provisions of § 363 it should seek injunctive relief from the court." *In re Executive Associates, Inc.*, 24 B.R. at 173.

In the case before us, the bank, quite rightly, has turned to this Court for relief rather than taking matters into its own hands. The relief it seeks, however, is not a termination or modification of the stay, pursuant to 11 U.S.C. § 362(d), nor a declaratory judgment that the funds in the debtor's two checking accounts are cash collateral, but an ex parte lifting of the stay or an ex parte order prohibiting the debtor from using the funds in its bank accounts pursuant to 11 U.S.C. § 362(f). Under this provision we may grant only such relief from the stay as is necessary to prevent irreparable damage to the bank's interest before there is an opportunity for notice and a hearing.

■ Before the bank is entitled to ex parte relief from stay or an ex parte order restraining the debtor, the bank must satisfy the requirements for injunctive relief. In this Circuit, it is well established that, to obtain a preliminary injunction, an applicant must show that he "is likely to

suffer irreparable injury if [such] relief is denied [and] there is either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the [applicant's] favor."

*In re Feit & Drexler, Inc.,* 760 F.2d 406, 415 (2d Cir.1985), quoting *Proctor & Gamble Co. v. Chesebrough-Pond's Inc.,* 747 F.2d 114, 118 (2d Cir.1984). Accord *Britt v. United States Army Corps of Engineers,* 769 F.2d 84, 88 (2d Cir.1985); *Jackson Diary, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). Although injunctive relief will generally be denied when the loss can be adequately compensated by an award of money damages, federal courts have found preliminary injunctions appropriate when the defendant intended to make any judgment that might be obtained uncollectible. *In re Feit & Drexler, Inc.,* 760 F.2d 406, 416 (2d Cir.1985) (finding it appropriate, based on defendant's numerous and substantial efforts to hide and secrete assets, for the District Court sitting as a Bankruptcy Court to issue a preliminary injunction to prevent the defendant from making any judgment the trustee might eventually obtain against her ineffectual).

We hold that the bank here has failed to make the requisite showing of irreparable damage, which must be "not remote or speculative but ... actual and imminent." *New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 755 (2d Cir.1977), quoted in *Jackson Diary, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). A bare assertion, in the subjunctive mood, that the debtor "may well remove its funds from the subject checking accounts" (Motion, paragraph 8), without any other alleged facts to indicate that the debtor may actually and imminently withdraw these funds, is altogether too conjectural to warrant ex parte relief. Entirely absent is any suggestion that the debtor has made any attempt or indicated any intention to use the funds in the accounts.

Nor has the bank met the second part of the test for injunctive relief. Allegations that the debtor owes the bank $138,000.00 for money lent and not repaid and that the debtor has no equity in its two identified checking accounts containing $2083.03 are insufficient, without the supporting documentation, to convince this Court that there is either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation. We know nothing about the circumstances of the loan to the debtor nor about the date or source of the funds in the checking accounts. Before the bank can hope to succeed, it must establish at least a prima facie right to setoff based on a valid claim.

Although we again remind the debtor that it uses the funds in these checking accounts at its peril without the authorization of this Court or the consent of the bank, we cannot grant the bank the relief it seeks ex parte. Accordingly,

The ex parte motion by the Franklin-Lamoille Bank for relief from automatic stay and for Order prohibiting use of cash collateral is DENIED.