**In re Rickey H. GIFFORD, Shannon D. Clopton–Gifford, Defendants.**

**Bankruptcy No. 94–30545(2)7.**

United States Bankruptcy Court, W.D. Kentucky.

Sept. 1, 1994.

Julia B. Barry, Louisville, KY, for debtor.

William W. Lawrence, Trustee, Louisville, KY.

David T. Wilson, Radcliff, KY, for creditor.

### MEMORANDUM–OPINION

J. WENDELL ROBERTS, Chief Judge.

This matter is presently before this Court on two related motions. The first is Debtors, Rickey H. Gifford and Shannon D. Clopton–Gifford's ("the Giffords"), Motion to Compel Fort Knox Federal Credit Union ("the Credit Union") to release the freeze on Debtors' share draft account no. 9638361. The second motion is the Credit Union's Motion to Terminate Stay. Having reviewed the Briefs filed by the parties, as well as the arguments of counsel presented at a telephonic hearing on this matter, this Court overrules the Giffords' Motion to Compel the Credit Union to release the freeze on their account and sustains the Credit Union's Motion to Terminate Stay.

### FACTS

The Giffords have a joint share draft account at the Credit Union, account number 9638361. The Giffords obtained a loan from the Credit Union in the amounts of $9,711.29 and $5,080.72. Pursuant to the loan agreement entered into with the Credit Union, the Giffords executed a promissory note and agreed to pay these amounts back, plus interest on the $9,711.29 at the rate of 13.9% per annum from February 20, 1994, and interest on the $5,080.72 at the rate of 9.9% per annum from February 20, 1994. To secure the loan, the Credit Union took a security interest in two pieces of property owned by the Giffords: (1) a 1989 Ford Escort, vehicle I.D. # 1FAPP3J3KW103812, and (2) the Giffords' share draft account. The Giffords executed a Security Agreement and a Line of Credit Agreement to this effect, on September 2, 1993, the same day the loan agreement was entered into.

The Giffords subsequently defaulted on their obligation and, pursuant to an acceleration clause contained in the promissory note, the entire obligation became due and owing.

On March 1, 1994, Mr. Gifford's paycheck was directly deposited into the share draft account at the Credit Union. One day later, on March 2, 1994, the Giffords filed for bankruptcy under Chapter 7 of the Bankruptcy Code. As a combined result of the Giffords' default and the filing of their bankruptcy action, the Credit Union immediately placed a freeze on the Giffords share draft account. At the time of the freeze, the Giffords had approximately $2,000.00 deposited in that account.

The Giffords have moved this Court to compel the Credit Union to release the freeze, arguing that by placing the freeze on their account the Credit Union has violated the automatic stay pursuant to 11 U.S.C. §§ 362(a)(3), (4), (5), (6), and (7). Meanwhile, the Credit Union has moved this Court to terminate the stay with regard to both the Ford Escort and the Credit Union account.

### DISCUSSION

I. **THE CREDIT UNION HAS NOT VIOLATED THE AUTOMATIC STAY BY FREEZING THE GIFFORDS' ACCOUNT.**

The Credit Union has not violated the automatic stay by freezing the Giffords' account. Bankruptcy decisions from numerous jurisdictions have held that a bank or a credit union's "freezing" of an account does not violate the automatic stay. *In re Briggs,* 143 B.R. 438 (E.D.Mich.1992); *In re Carpenter,* 14 B.R. 405 (M.D.Tenn.1981); *In re Gazelle, Inc.,* 17 B.R. 617 (W.D.Wis.1982).

*In re Briggs* is particularly enlightening as it involves facts very similar to this case. Like the Giffords in this case, the debtor in *In re Briggs* obtained a loan from a credit union and granted the credit union a security interest in all of the shares and deposits in his "individual and joint accounts with the credit union now and in the future." *Id.* at 445–46. When the debtor filed for bankruptcy, the credit union placed an administrative freeze on his account, which contained the grand sum of $5.00. The Court held that the credit union's administrative freeze did not violate the automatic stay imposed by §§ 362(a)(3), (4), (5), (6), or (7). *Id.* at 446–47.

Sections 553(a), 362(a), 362(a)(7), 363(c)(2) and 506(a) when read together support a bank or credit union's right to temporarily freeze a debtor's bank account. Under

Sections 553(a) and 362(a)(7), a bank may not exercise its right of set off, if it possesses such a right, with regard to funds on deposit without first obtaining a court order. Meanwhile, under sections 506(a) and 363(c)(2), a debtor in possession or trustee may not use those funds without first obtaining a court order. Consequently, a temporary freeze that maintains the status quo pending judicial action reconciles these Code provisions. *In re Gazelle,* 17 B.R. at 620; *See also In re Carpenter,* 14 B.R. at 407–408.

Accordingly, the Credit Union's administrative freeze of the Giffords' account was permissible to maintain the status quo. It did not constitute a violation of the automatic stay.

## II. *THE CREDIT UNION IS ENTITLED TO HAVE THE AUTOMATIC STAY TERMINATED.*

 The Giffords are clearly in default in the performance of the terms and conditions of the promissory notes and security agreements at issue, and their obligation is consequently now due and owing in full. Accordingly, the Credit Union is entitled under § 362(d) to relief from stay and possession of the funds in the Gifford's share draft account, as well as the Ford Escort.

This Court rejects the Giffords' argument that the Credit Union does not have an enforceable lien on the share draft account simply because bank accounts are excluded from the scope of Article 9 pursuant to K.R.S. 355.9–104(12). With only a few minor variations, Kentucky has adopted Article 9 of the Uniform Commercial Code. K.R.S. 355.9–101, et seq. K.R.S. 355.9–104 identifies certain transactions which are excluded from the provisions of Article 9. This exclusion list includes security interests in deposit accounts. Nevertheless, "[t]he fact of exclusion does not mean a security interest in the excluded transaction cannot be created, only that if a security interest exists in the excluded transaction, Article 9 does not govern the right of the parties; other law, i.e., state or federal controls." Liebson and Nowka, *The Uniform Commercial Code of Kentucky,* § 10.1(c) at 743 (1992). This interpretation is supported by the Official

Comments to the Uniform Commercial Code. Comment 1 to U.C.C. § 9–104 states that "[w]here a federal statute regulates the incidents of security interests in particular types of property those security interests are of course governed by the federal statute and excluded from this Article."

In this case, the Credit Union's security interest in the Giffords' share draft account was created pursuant to the Federal Credit Union Act. 12 U.S.C. § 1751, et seq. Section 1757(11) of that Act expressly states that a federal credit union *shall* have the power "to impress and enforce a lien upon the shares and dividends of any member, to the extent of any loan made to him and any dues or charges payable by him." Thus, the Credit Union clearly had the statutory authority to create the security interest at issue.

## CONCLUSION

For the above-stated reasons, this Court by separate Order overrules the Giffords' Motion to Compel Fort Knox Federal Credit Union to release the freeze on their share draft account no. 9638361, and sustains Fort Knox Federal Credit Union's Motion to Terminate Stay.